(810 P.2d 1163)

No. 65,341

ELNORA DONNINI and THE ESTATE OF FAUST DONNINI, *Appellees/ Cross-appellants*, v. BIBIANO B. OUANO, JR., *Appellant/Cross-appellee*.

Petition for review denied June 11, 1991.

Opin-ion filed May 3, 1991.

*William Tinker, Jr.*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellant.

*Randall E. Fisher* and *Mark B. Hutton*, of Michaud, Hutton & Bradshaw, of Wichita, for appellees.

Before PIERRON, P.J., BRAZIL and LARSON, JJ.

BRAZIL, J.: Dr. Bibiano B. Ouano, Jr., appeals from a jury's finding of negligence in a medical malpractice action against him. Ouano claims the trial court erred in failing to measure damages by diminution of chance to survive and in failing to instruct on loss of chance causes of action and that he was entitled to judg-

ment as a matter of law based on the verdict in his first trial. We affirm.

In March 1985, Faust Donnini, a 55-year-old pharmacist, experienced an episode of gross hematuria (blood in the urine). That day, he saw his family doctor and employer, Lawrence Richard Will, a general practitioner, because of the hematuria. Will hospitalized Donnini at the Wellington Hospital and Clinic. He then consulted Ouano.

There is a medical principle in urology that a man in his mid-fifties who has hematuria is presumed to have cancer until proven otherwise. Standard procedure calls for a doctor to look for a tumor in the bladder, ureter, or kidney.

After taking a history and performing a physical examination, Ouano performed a cystoscopy, which is the one test to determine if there is a tumor in the bladder. The cystoscopy was later determined to be negative. An intravenous pyelogram (IVP) was also performed on Donnini that was negative. The IVP is the only test used to find a tumor in the ureter. The IVP is also a preliminary test used to check for a tumor in the kidney. The second test used for examination of the kidney is the retrograde pyelogram. Ouano originally intended to perform a retrograde pyelogram at the same time he was performing the cystoscopy; however, he decided not to perform the retrograde pyelogram. Ouano next recommended a sonogram and CT scan be performed. Both tests were negative for a tumor. The sonogram indicated the presence of a cyst in the lower pole of the left kidney.

There is conflicting testimony as to what happened after the tests were completed. Donnini's wife, Elnora, and Will both testified that Ouano attributed the bleeding to a cyst and recommended nothing other than monthly sonograms to monitor the cyst. Ouano testified he told Will that all the tests should be repeated. The hematuria stopped within a few days, and Donnini was released from the hospital.

Donnini experienced a second episode of the hematuria in August 1985. Will hospitalized him August 10-11, 1985, at the Wellington Hospital. Ouano was not consulted at that time. Donnini had an arteriogram performed on August 26, 1985, the results of which were negative.

Ouano testified he sent a notice to Donnini in July 1985. El-nora, however, testified that the only recall notice they ever received arrived after Donnini had seen another doctor and had been diagnosed as having transitional cell carcinoma. In late February or March 1986, Will referred Donnini to Dr. Oral E. Bass II, a urologist in Wichita, who made the diagnosis of kidney cancer. Donnini was treated for the disease unsuccessfully and died April 14, 1987.

Elnora Donnini and the Estate of Faust Donnini sued Ouano for the wrongful death of Donnini. Elnora contended Ouano departed from the standard approved medical practice. The decedent's family proceeded to trial against Ouano on two alternative theories. First, they proceeded on the theory that Ouano's negligence was the probable cause of decedent's injuries and death. Second, they proceeded on the theory that Ouano's negligence deprived the decedent of a substantial possibility of recovery from the cancer.

After a trial in 1989, a jury found Ouano 42.5 percent at fault in the death of Donnini. It found Will 42.5 percent at fault and Donnini 15 percent at fault. It further found Donnini would have had an appreciable chance of survival if he had received proper medical treatment from Ouano, but that Ouano's actions were not a substantial factor in causing the death of Donnini. The jury determined Donnini's chances for survival if he had received proper medical care from Ouano to be 50 percent and found Donnini's chances for survival under the care actually given by Ouano to be 50 percent. The court awarded damages in the amount of $293,693.10, which is 41.7 percent of the total amount of damages awarded Elnora by the jury.

Elnora moved to reform the verdict form; to grant judgment notwithstanding the verdict; or, in the alternative, to grant a new trial. She claimed the verdict form contained answers that were inconsistent with one another and with the evidence. After hearing arguments and considering briefs filed in the matter, the court ordered that a new trial be conducted on the issues of liability alone. On April 25, 1990, after a second trial on the matter, the jury found Ouano to be 41.7 percent at fault, Will 43.7 percent at fault, and the decedent 14.6 percent at fault. It also found Donnini's chances for survival had he received proper medical

care to be 55 percent and that he had 0 percent chance of survival under the care actually given.

Ouano claims that in a cause of action based on a diminution of a chance to survive a plaintiff's verdict must be reduced by the percentage of chance of survival lost by reason of plaintiff's conduct. Elnora responds that this is not a "loss of chance" case but rather a traditional survival/wrongful death case, although both theories were alternatively presented to the jury.

Ouano is asking this court to determine the legal effect of the jury's findings. "This court's review of conclusions of law is unlimited." *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988).

In a negligence action, the plaintiff must normally prove the negligent act was a cause in fact of the plaintiff's injury. See *Little v. Butner*, 186 Kan. 75, 79, 348 P.2d 1022 (1960). In *State Highway Comm. v. Empire Oil & Ref. Co.*, 141 Kan. 161, 40 P.2d 355 (1935), the court defined legal cause as the invasion of some legally protected interest of another for which the actor is held responsible for the harm. The act or omission must be a "substantial factor" in bringing about the harm. 141 Kan. at 165.

Kansas follows the definition of legal cause found at Restatement (Second) of Torts § 431 (1965):

"The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

Comments a and b of the Restatement (Second) of Torts § 433 B (1965) provide:

"a . . . [I]n civil cases, the plaintiff is required to produce evidence that the conduct of the defendant has been a substantial factor in bringing about the harm he has suffered, and to sustain his burden of proof by a preponderance of the evidence. This means that he must make it appear that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

"b The plaintiff is not, however, required to prove his case beyond a reasonable doubt. He is not required to eliminate entirely all possibility

that the defendant's conduct was not a cause. It is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than it was not."

In the instant case, the jury found Ouano's negligence was the cause in fact of Donnini's death. This finding is demonstrated in the special interrogatory answers that Donnini's chances for survival under Ouano's care as given were 0 percent as compared to a 55 percent chance of survival had he received proper medical care. Thus, the jury found it was more likely than not that Ouano's conduct was a substantial factor in bringing about the harm. This finding is supported by the opinion testimony that Donnini may have had a greater than 90 percent chance of survival had Donnini's illness been diagnosed in March 1985. The finding also shows the jury found negligence under traditional survival/wrongful death law not "loss of chance" as contended by Ouano.

The "loss of chance" rule is an exception to the normal requirement of proving causation. In *Roberson v. Counselman*, 235 Kan. 1006, 686 P.2d 149 (1984), the court recognized the "loss of chance" cause of action applies when a doctor's negligence eliminates or substantially reduces a patient's chance of survival. The court held that the substantial factor test rather than the but for test is the proper test for causation. 235 Kan. at 1010-13.

In *Roberson*, the decedent had a long history of heart problems. He went to his chiropractor complaining of pain in his left shoulder and left side. Despite the doctor's knowledge of the decedent's heart condition, he diagnosed a neuromuscular problem, performed two chiropractic adjustments on the decedent, and failed to refer him to a medical specialist. The decedent died of a heart attack that evening. The experts testified in essence that, as a matter of statistical probability, the defendant's negligence was not the cause of the decedent's death. One expert testified the defendant's negligence increased the decedent's chance of mortality from 19 percent to 25 percent, or conversely reduced his chance of survival from 81 percent to 75 percent. Another expert testified that the decedent had only a 40 percent chance of survival and no chance of survival by the time decedent had his heart attack. 235 Kan. at 1020-21.

Ouano argues the jury's finding that Donnini had a 55 percent chance of survival if treated properly shows this is a loss of chance

case. He argues the jury's finding of a 55 percent chance of survival was Donnini's chance of surviving cancer, not the raw likelihood that Ouano caused Donnini's death.

Ouano relied on *Boody v. U.S.*, 706 F. Supp. 1458 (D. Kan. 1989), as support for his argument. *Boody* was a loss of chance case where a doctor failed to diagnose cancer. The plaintiff's cancer was misdiagnosed, and she was deprived of a 51 percent chance of surviving five years. She was not deprived of a 51 percent chance of being cured. 706 F. Supp. at 1465.

In comparison, the jury's finding in the instant case on percentage of chance of survival is not limited to five years. Bass testified that, in March 1985, Donnini probably had a grade II, stage O, A, or B tumor, which has a good prognosis. By the time cancer was diagnosed, Donnini had a grade II, stage D tumor that had metastasized. Tumors are graded from I to IV. This indicates the tumor's rate of growth. Stage indicates the size of the tumor and where it is located. The stage increases as the tumor grows into deeper layers of tissue. Bass testified that a patient living five years is probably cured of the tumor for which he has been treated. Thus, Donnini had a greater than 50 percent chance of being cured according to Bass' testimony.

A cause of action in which the patient had a greater than 50 percent chance of surviving does not fall under the causation rule from *Roberson*. The *Boody* court stated: "*Roberson* is part of a growing number of courts to adopt this type of causation test and recognize a cause of action for a *less than even chance of survival.*" (Emphasis added.) 706 F. Supp. at 1463.

Ouano claims Elnora should only be compensated for the percentage of chance of living or surviving that Donnini lost. Since this case was determined under traditional negligence causation rules, it is not necessary to determine how damages should be measured in a diminution of chance to survive action.

Ouano claims that the trial court erred by failing to inquire of the jury in the second trial (1) whether the decedent had an appreciable chance to survive had he received proper treatment from Ouano and (2) whether Ouano was a substantial factor in causing the decedent's death. Ouano claims the failure prevents the court from determining if Elnora met her burden of proof.

Elnora responds that the questions presented to the jury met the requirements of Kansas law.

The special verdict in the second trial was as follows:

"1. Do you find any of the parties to be at fault?

Yes X NO ___

(Number of jurors in agreement 12)

"2. If you answer question Number 1 yes, then considering all of the fault at one hundred percent, what percentage of the total fault is attributable to each of the parties?

| | |
|---|---|
| Lawrence Will, D.O. | (0% to 100%) 43.7% |
| Bibiano B. Ouano, Jr., M.D. | (0% to 100%) 41.7% |
| Faust Donnini | (0% to 100%) 14.6% |
| Total | 100% |

(Number of jurors in agreement 12)

"3. What do you find, as a percentage of one hundred, were Faust Donnini's chances for survival, if he had received proper medical care?

55%

(Number of jurors in agreement 12)

"4. What do you find, as a percentage of one hundred, were Faust Donnini's chances for survival under the care actually given?          0%

(Number of jurors in agreement 12)"

As Elnora points out, the jury was asked to determine whether Donnini had an appreciable chance of survival when it was asked to answer question number three. It was asked to determine whether Ouano was a substantial factor in injuring decedent when it was asked to answer question number four.

In addition, the court's instruction number eight required that, before the jury could find a party at fault, it must find: "1. That Faust Donnini would have had an appreciable chance of survival if the tumor had been diagnosed and treated in March, July or August of 1985; and 2. That the failure to diagnose the tumor was a substantial factor in causing the death of Faust Donnini."

By finding Ouano at fault, in light of instruction number eight, the jury must have found Donnini would have had an appreciable chance of survival with proper medical care and that Ouano's negligence was a substantial factor in causing Donnini's death.

The trial court also instructed the jury on the definitions of "appreciable chance of survival" and "substantial factor." The court instructed:

"As used in this instruction an 'appreciable chance of survival' is one which is capable of being estimated, weighed, judged of, or recognized by the mind. As used in this instruction a 'substantial factor' must be distinguished from a factor which had a merely negligible effect in causing Faust Donnini's death. That is, did it have such an effect in contributing to the death of Faust Donnini as would lead you as reasonable persons, to regard it as a cause of the death of Faust Donnini. There may have been more than one 'substantial factor' in causing the death of Faust Donnini."

"It is the duty of the trial court to properly instruct the jury upon the theory of the case. Errors regarding jury instructions will not demand reversal unless they result in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal." *Trout v. Koss Constr. Co.*, 240 Kan. 86, 88-89, 727 P.2d 450 (1986).

In the instant case, Ouano's arguments are without merit. The trial court did inquire of the jury regarding whether Donnini had an appreciable chance to survive with proper treatment and whether Ouano's negligence was a substantial factor in causing Donnini's death.

Finally, Ouano claims the jury's answers to questions three, four, five, and six in the first trial are consistent and, thus, a new trial was not warranted. The special verdict in the first trial was as follows:

"We the jury present the following answers to the questions submitted by the Court:

"1. Do you find any of the parties to be at fault?

Yes X No. ___

(Number of Jurors in agreement 12)

"2. If you answer question number 1 Yes, then considering all of the fault at one hundred percent, what percentage of the total fault is attributable to each of the parties?

| | |
|---|---|
| Lawrence Will, M.D. | (0% to 100%) 42.5% |
| Bibiano B. Ouano, Jr., M.D. | (0% to 100%) 42.5% |
| Faust Donnini | (0% to 100%) 15 % |
| Total | 100% |

(Number of Jurors in agreement 11)

"3. If you find any fault on the part of Dr. Ouano, would Faust Donnini have had an appreciable chance of survival if he had received proper medical treatment from Dr. Ouano?

Yes X No. ___
(Number of Jurors in agreement 12)
"4. Do you find that the actions of Dr. Ouano were a substantial factor in causing the death of Faust Donnini?
Yes ___, No. X
(Number of Jurors in agreement 12)
"5. What do you find, as a percentage of one hundred, were Faust Donnini's chances for survival, if he had received proper medical care from Dr. Ouano?                                        50%
(Number of Jurors in agreement 12)
"6. What do you find, as a percentage of one hundred, were Faust Donnini's chances for survival under the care actually given by Dr. Ouano?                                        50%
(Number of Jurors in agreement 12)"

Special verdicts must be consistent with one another and with the general verdict. See, *e.g.*, *Knape v. Livingston Oil Co.*, 193 Kan. 278, 280, 392 P.2d 842 (1964). Under K.S.A. 60-249(a), "a jury's findings on the essential issues submitted by way of special verdicts must be certain and definite, and must not be conflicting or inconsistent." *Rohr v. Henderson*, 207 Kan. 123, 130, 483 P.2d 1089 (1971). To determine whether the findings are inconsistent, "the findings are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions and issues submitted." 207 Kan. at 130. "Special findings are to be liberally construed on appeal and interpreted in the light of the testimony with the view of ascertaining their intended meaning." *Bott v. Wendler*, 203 Kan. 212, 218, 453 P.2d 100 (1969).

The court in *Reed v. Chaffin*, 205 Kan. 815, 819-20, 473 P.2d 102 (1970), found special findings patently inconsistent where one finding showed a right to an award of damages and the other showed the contrary. Where answers are so inconsistent as not to warrant the trial court entering judgment on the jury's special verdict, a new trial should be granted. See *Rohr v. Henderson*, 207 Kan. at 130.

In the instant case, the trial court granted a new trial after hearing arguments and briefs by counsel on Elnora's motion to reform judgment or grant a new trial. Although the record does not indicate the court's specific findings, it was correct in granting a new trial, as the jury's findings were inconsistent. Some findings showed a right to an award of damages while others showed the

contrary. Furthermore, this court cannot override the decision of the trial court which has specifically found the answers presented by the jury are not approved or accepted. *Collett v. Estate of Schnell*, 194 Kan. 75, 80, 397 P.2d 402 (1964). The trial court rejected the special verdict by granting a new trial.

Ouano also argues the jury's completion of the damage categories indicates no award of those damages to Elnora. Ouano is correct in part; however, because other findings show Elnora is entitled to damages, an inconsistency exists on the findings.

Elnora also claims Ouano acquiesced in the trial court's granting of a new trial and cannot now challenge the trial court's order granting that trial. As Ouano points out, however, an order granting a new trial is generally not appealable as a final judgment. *Brown v. Fitzpatrick*, 224 Kan. 636, 638, 585 P.2d 987 (1978). The only exception recognized is where an order granting a new trial under K.S.A. 60-259(e) is challenged on jurisdictional grounds. 224 Kan. at 638. Thus, Ouano did not acquiesce in the trial court's granting of a new trial.

Affirmed.