**Ernestine BARRETT, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 92–2362–JWL.**

United States District Court,
D. Kansas.

Feb. 1, 1994.

Donald T. Taylor, Robb & Taylor, Kansas City, KS, Harry D. Callicotte, Kansas City, MO, Timothy D. Hamilton, Kansas City, KS, for plaintiff.

Robert A. Olsen, Office of U.S. Atty., Kansas City, KS, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

Plaintiff Ernestine Barrett brings this action individually, and on behalf of her son,

Erick Barrett, in an effort to recover against the United States of America for Erick Barrett's wrongful death and pain and suffering. She asserts a cause of action under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et al.* ("FTCA"), claiming that the death of her son was caused by the negligent acts or omissions of prison officials at the United States Penitentiary, Leavenworth, Kansas ("USPL"). She also alleges that prison officials showed a reckless disregard for Erick Barrett's right to be free from violent attacks in violation of the Eighth Amendment of the United States Constitution.

Plaintiff contends that USPL officials recklessly and negligently failed to investigate or failed to investigate properly a series of incidents at USPL involving Mr. Barrett between September of 1990 and February of 1991. She alleges that as a result of this failure to investigate, steps were not taken to protect Erick Barrett from a threat to kill or permanently injure him by the Muslim religious group and certain of its members at the USPL. She further claims that this threat was eventually carried out and, as a result, her son was killed.

A trial to the court was held in this matter on January 19th and 20th of 1994. At the close of plaintiff's evidence, the court found against plaintiff on the issue of causation and entered judgment in favor of defendant as a matter of law. *See* Fed.R.Civ.Pro. 52(c); 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 2571 n. 2.3 (Supp.1993) (R. 52(c) authorizes court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence). The court now makes the following findings of fact and conclusions of law. Fed.R.Civ.Pro. 52(c).

## II. Findings of Fact

1. In 1982, Erick Barrett began serving a twenty year sentence for bank robbery. From August 22, 1990 until February 9, 1991, Mr. Barrett was housed in federal custody at the United States Penitentiary in Leavenworth, Kansas ("USPL"). On February 9, 1991, Erick Barrett was stabbed and killed by a fellow inmate.

2. On September 7, 1990, an inmate who could not be identified reported to John Trott, a case manager at the prison, that unidentified members of a Muslim religious group within the prison were discussing obtaining a knife and retaliating against Erick Barrett. The inmate stated the planned retaliation was in response to a conflict over the top bunk between Mr. Barrett and his cellmate, a member of the Muslim group. He further stated that Mr. Barrett had punched his cellmate in the face. Mr. Trott sent a memorandum to the USPL operations lieutenant with the above information and placed a copy of the memo in Mr. Barrett's file.

3. On the same day other USPL officials were informed that Mr. Barrett had allegedly "slapped" his cellmate because of a disagreement over the lower bunk. These officials were also aware that Muslims allegedly threatened to retaliate against Mr. Barrett. Lieutenant L. Savitch talked with Mr. Barrett and the other inmate, but both men denied any argument or fight had occurred. After speaking with the men, it was the lieutenant's belief that Barrett had, in fact, slapped the other inmate. In a memorandum written to a superior he stated, "Because no staff witnessed the incident, and inmate refuses to cooperate in the investigation, the incident can not be substantiated at this time. Recommend that the inmates remain in administrative detention pending further review by the SIS (Special Investigation Services) into this matter."

4. Mr. Barrett and the other inmate were placed in Administrative Detention pending an investigation.

5. USPL officials began an investigation, but the scope of this investigation is unclear. Lieutenant Edward R. Pierce, Special Investigative Supervisor, testified that investigators spoke with both Mr. Barrett and the other inmate, but neither prisoner stated that there was any significant problem. USPL officials also spoke with other inmates and informants, but did not uncover any information that would corroborate the information related to Mr. Trott. There is little evidence of any further investigation. Mr. Trott was not contacted by any investigator

regarding the information he received from the informant.

6. On September 11, 1990, a USPL investigator, B.F. Thomas, concluded that there was no substantial evidence of an assault by Mr. Barrett on his cellmate and recommended Mr. Barrett be released back into the general population with a new cell assignment. Mr. Barrett was then released and reassigned quarters.

7. The court finds that Mr. Barrett requested to be so released and denied being in any danger from any inmate in the penitentiary. From September 11, 1990, until February 9, 1991, Mr. Barrett never told prison officials that he was in danger from, or that there were threats against his life from any inmate or group of inmates.

8. On October 2, 1990, Mr. Barrett was again placed in Administrative Detention pending investigation into an assault. There was no evidence produced at trial to indicate that this physical confrontation occurred with an inmate who was in any way related to the Muslim group who had threatened retaliation against Mr. Barrett.

9. On February 9, 1991, Mr. Barrett fought with another inmate, Andre Patrick. Inmate Patrick stabbed Mr. Barrett during this fight and the resulting wound to Mr. Barrett's heart ultimately caused his death.

10. Inmate Patrick was a member of the Moorish Science Temple of America ("Moors") and was not a member of the Muslims.

11. The court finds that the Moors and the Muslims are two separate and distinct religious groups, each of which had followers within the general population of the USPL. The Moors and Muslims follow distinct religious teachings and engage in separate rituals. These religious groups are not gangs and they are not considered security threat groups by USPL officials.

12. USPL officials conducted a thorough and complete investigation of the death of Mr. Barrett and could not establish a definitive motive or reason for the fight between Mr. Barrett and inmate Patrick. It is the opinion of Edward Pierce, Special Investigative Supervisor and a lieutenant at USPL,

that the fight was the result of a personal conflict between the two men.

13. Anthony Hall, another inmate at USPL during the relevant time period, testified that Mr. Barrett and Mr. Patrick had a personal conflict and that this conflict resulted in the fight leading to Mr. Barrett's death.

14. The court finds that USPL officials were not aware of a fight that occurred between Mr. Barrett and Mr. Patrick some time before the incident of February 9, 1991, nor could they have been aware of this physical confrontation with ordinary care and reasonable diligence. The court finds that the government had no knowledge of an ongoing conflict between Mr. Barrett and Mr. Patrick and could not have known of such a conflict with reasonable diligence.

15. The court finds that the fight between Mr. Barrett and his cellmate in September of 1990 was in no way related to the death of Mr. Barrett in February of 1991. Mr. Patrick was not a member of the Muslim religious group and he was not acting on behalf of such group. There is no causal relationship between the threat made in September of 1990 by the Muslims and Mr. Patrick's stabbing of Mr. Barrett in 1991.

16. The alleged negligence of USPL officials in failing to thoroughly investigate the incidents of September and October of 1990, including the Muslim threat, was not the proximate cause of Mr. Barrett's death. The cause of Mr. Barrett's death was a personal conflict between he and Andre Patrick, which bore no relationship to a threat by the Muslims. Prison officials did not know of this personal conflict, nor could they have known of it with reasonable diligence in time to prevent Mr. Barrett's death.

*III. Conclusions of Law*

*1. Negligence*

 The Federal Tort Claims Act provides that the United States shall be liable in the same manner and to the same extent as a private individual under the circumstances. 28 U.S.C. § 2674. It is well-established that provisions of the FTCA allow federal prisoners to sue the United States for injuries

sustained while incarcerated. *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1852–53, 10 L.Ed.2d 805 (1963). The substantive law of the state which is the site of the alleged tort governs claims under the FTCA. *See* 28 U.S.C. §§ 1346(b), 2674; *Richards v. United States,* 369 U.S. 1, 9–10, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). However, the duty of care owed by the Bureau of Prisons to federal prisoners ultimately is fixed by 18 U.S.C. § 4042,[1] independent of an inconsistent state rule. *Muniz,* 374 U.S. at 164, 83 S.Ct. at 1858–59.

■ Under Kansas law, in order to recover in a negligence case, a plaintiff must establish that a defendant breached a duty of reasonable care owed to the plaintiff and that a causal connection between the duty breached and the damage sustained exits. *Wichita Federal Savings and Loan Ass'n v. Black,* 245 Kan. 523, 529, 781 P.2d 707, 712 (1989). Plaintiff must sustain this burden of proof by a preponderance of the evidence. *Donnini v. Ouano,* 15 Kan.App.2d 517, 520, 810 P.2d 1163, 1166 (1991).

■ Prison officials have a duty to exercise ordinary and reasonable care to safeguard a prisoner in their custody from attack by other prisoners. *Washington v. State,* 17 Kan.App.2d 518, 524, 839 P.2d 555, 559 (1992). There is no breach of this duty, however, unless the trier of fact concludes that a danger was known, or in the exercise of ordinary care, should have been known, by prison officials. *Id.* Moreover, prison officials are only liable for acts which are the proximate cause of the harm to the inmate. *Id.* Whether there is a causal connection between a prison official's breach of a duty and the alleged harm is a question of fact. *Durflinger v. Artiles,* 234 Kan. 484, 488, 673 P.2d 86 (1983).

A causal connection exists if the alleged conduct is a substantial factor in bringing about the harm. *Donnini,* 15 Kan.App.2d at

520, 810 P.2d at 1166 (citing Restatement (Second) of Torts § 431 (1965)). It must appear more likely than not that the conduct of the defendant was a substantial factor in bringing about the harm. *Id.* 810 P.2d at 1166–67. A mere possibility of such causation is not enough. *Id.* at 1167.

■ The court finds that there is no causal connection between the defendant's alleged failure to investigate the September and October incidents and Mr. Barrett's death. The threat of retaliation by the Muslim organization and Mr. Patrick's stabbing of Erick Barrett were unrelated incidents. Thus, any failure on the part of USPL officials to act in response to that threat was not the cause of Mr. Barrett's death. Mr. Barrett's death was the result of a personal conflict between he and Mr. Patrick, a conflict of which USPL officials had no knowledge and could not have been aware of even with reasonable diligence.

Mr. Patrick was not a member of the Muslim group which allegedly threatened to attack Mr. Barrett with a knife, but rather was part of another religious group, the Moors.[2] Mr. Barrett had had some disagreements with Mr. Patrick and the grand sheik of the Moors, Anthony Appleby. Evidence at trial indicated Mr. Patrick and Mr. Appleby were engaged in a homosexual relationship of which Mr. Barrett disapproved. Mr. Barrett had expressed his disapproval a number of times and there were verbal confrontations as well as physical ones between the three men.

There was little evidence at trial to indicate that the two religious groups were in any way related, and absolutely no evidence to indicate that one religious group would defend or carry out the threats of the other. David Brooks, plaintiff's witness and inmate at the USPL at the time the relevant events occurred, testified that the Muslims and the

---

1. 18 U.S.C. § 4042 (1988) provides in pertinent part: The Bureau of Prisons, under the direction of the Attorney General, shall—(1) have charge of the management and regulation of all Federal penal and correctional institutions; ... (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States....

2. Because the court finds that there is no causal link between any alleged breach of a duty and the harm to Mr. Barrett, the court need not decide whether USPL officials actually breached a duty of ordinary care with regard to the investigation of the September and October incidents.

Moors participated in the same ceremonies and rituals at the prison. Even if this were true, it does not establish that the Moors and Muslims would retaliate for or defend one another. Anthony Hall, another inmate and a witness for plaintiff, testified that the Muslims and the Moors did not attend the same services. Mr. Brooks tried to persuade the court that the two groups were related and, thus, the stabbing and the threat were related; however, the court discounts his testimony. His ideas about the cause of Mr. Barrett's death were attacked successfully by the prosecution and his credibility damaged in the eyes of the court.[3]

Mr. Hall testified that the source of the conflict between Mr. Barrett and Mr. Patrick was Mr. Barrett's disapproval of Mr. Patrick's homosexuality. Even Mr. Brooks admitted that a homosexual relationship between inmate Patrick and inmate Appleby was a source of conflict between Mr. Patrick and Mr. Barrett. The court finds that the fight of February 1991, which led to Mr. Barrett's death, was caused by a personal conflict between Mr. Barrett and Mr. Patrick and was not related to the incidents of September and October. Thus, the court finds that any failure to investigate those incidents or any failure to segregate Mr. Barrett from certain prisoners as a result of those incidents was not the proximate cause of Mr. Barrett's death.

### 2. Discretionary Function Exception

■ At the close of plaintiff's evidence, the court ruled on the issue of proximate cause, which effectively foreclosed plaintiff from recovery on her negligence cause of action. The court took under advisement defendant's claim that plaintiff's suit is barred by the discretionary function exception to the Federal Tort Claims Act.[4] 28 U.S.C. § 2680(a).[5] Because this issue is one of subject matter jurisdiction, the court rules on it as well.[6] For the reasons set forth below, the court is

---

**3.** For instance, in a letter written to Mr. Barrett's mother shortly after Mr. Barrett's death, Mr. Brooks stated that he "was not aware of any beef [Barrett] was having," nor did he "suspect any type of problem." However, in his deposition taken for purposes of trial, Mr. Brooks testified that he believed the threat of September 1990 was carried out by Mr. Patrick in February of 1991. Mr. Brooks did not learn of any new events or circumstances between the time of his letter and the time of trial which would explain such an inconsistency in his opinion.

**4.** Defendant moved for summary judgment on plaintiff's claims on this issue. However, the motion was filed out of time and only a few weeks before trial. Plaintiff argued that defendant had waived its right to assert the discretionary function exception as a defense because it did not raise the issue in its answer, nor did it preserve the issue in the final pretrial order. Plaintiff also argued that defendant admitted in its answer that the prison officials were not engaging in discretionary functions.

The court found that defendant did not admit that prison officials had violated a mandatory duty, nor did the defendant waive the issue by failing to preserve it in the pretrial order. The court reasoned that although the discretionary function exception operates like an affirmative defense, it is, in fact, a matter of subject matter jurisdiction, and like other matters of subject matter jurisdiction the issue could be raised at any time. *Jablonski v. United States*, 712 F.2d 391, 394–95 (9th Cir.1983) (Even though not preserved as a defense in pretrial order, and raised for the first time on appeal, court had to

consider the merits of government's claim that an exception under 28 U.S.C. § 2680 applied.); *see also Crow v. United States*, 634 F.Supp. 1085, 1087–88 (D.Kan.1986).

However, the court did find that plaintiff would be unduly prejudiced if the court resolved the merits of the issue on defendant's motion. Because of the late filing, plaintiff could not be given the full response time it was entitled to under D.Kan.R. 206 and still be ready for trial on the scheduled date. Thus, the court found that even though defendant retained the right to raise the discretionary function issue, plaintiff was entitled to be fully heard on the applicability of the discretionary function exception at trial.

**5.** 28 U.S.C. § 2680(a) reads in pertinent part:

The provision of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

**6.** Whether this exception applies is a threshold issue, and analysis of the exception must precede any negligence analysis. *Miller v. United States*, 710 F.2d 656, 662 (10th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983). However, because of the unique procedural posture of this case, the court addresses it second and as an alternative basis for the dismissal of the plaintiff's claims.

persuaded that USPL officials did not violate any mandatory directive and that plaintiff's claims are barred by the discretionary function exception.[7]

■ The FTCA's broad waiver of sovereign immunity is limited by the discretionary function exception. The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). In determining the scope of the exception, this court must apply a two-part test, as was set forth by the Supreme Court in *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The first prong of the test is to determine whether the challenged conduct involves an element of judgment or choice or whether it involves a prescribed course of conduct for the government official. *Kiehn v. United States,* 984 F.2d 1100, 1102 (10th Cir.1993). If the conduct involves discretionary judgment, the second step is to "determine whether that judgment is the kind that the discretionary function exception was designed to shield." *Id.* at 1103 (citing *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1959). The exception shields only those decisions "based on considerations of public policy." *Id.*

■ To determine whether an officer's actions are protected, the court looks not to his or her status or rank, but, rather, to the nature and quality of the questioned acts. *United States v. Gaubert,* 499 U.S. 315, 321–22, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). There is no bar to recovery when a statute, regulation, or policy mandates a specific course of action for government officials. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958–59. When a specific course of action is prescribed, the governing standard obviates any element of judgment on the official's part,

and the official has no rightful option but to adhere to the directive. Thus, under the circumstances of this case, the exception does not apply if USPL officials failed to follow mandatory procedures set out in a federal statute, federal regulations or in the Bureau of Prison's own regulations. *See Knappick v. United States,* 875 F.2d 318, 1989 WL 54002, *1 (9th Cir.1989).

The court finds that USPL officials did not violate either a statute, regulation or policy set by the Bureau of Prisons. Plaintiff argues that Department of Justice "program statements" mandate certain acts on the part of prison officials and that USPL officials in this case violated these rules and duties. Program statements identify the "policies and procedures prescribed" for the care and control of inmates within the prison system. *See* Program Statement # 5270.7, Plaintiff's Ex. 34. Plaintiff cites specifically to Chapter 9 which guides the placement of inmates in administrative detention and the segregation of inmates for disciplinary reasons. Plaintiff argues that USPL officials should have either kept Mr. Barrett in administrative detention for a greater length of time or segregated him from the general population of the prison.

The court finds that the determination of whether to keep Mr. Barrett in administrative detention or to segregate him for disciplinary reasons is a decision left to the discretion of USPL officials. USPL officials' decision to remove Mr. Barrett from administrative detention in September and October of 1990 was "a matter of choice" and a decision which involved the exercise of judgment. The program statements state that an inmate "may" be placed in administrative detention or "may" be placed in disciplinary segregation. There is no mandatory language in the program statement, nor does the statement identify any specific criteria, which if analyzed, would *mandate* a certain result.

---

7. It is not yet clear under the law of this jurisdiction who ultimately bears the burden of persuading the court that a government official's or employee's actions are protected or not protected by the discretionary function exception to the FTCA. *See Kiehn v. United States,* 984 F.2d 1100, 1105 (10th Cir.1993); *Prescott v. United*

*States,* 973 F.2d 696, 701 (9th Cir.1992). The court need not address this issue, however, for it finds that even if the burden lies with the government, the defendant has satisfied this burden by its production of evidence through plaintiff's witnesses in this case.

Rather, as USPL officials testified, it is their responsibility to evaluate all circumstances, and render a judgment as to the placement of the inmate.[8] *See Rhodes v. Chapman*, 452 U.S. 337, 349 n. 14, 101 S.Ct. 2392, 2400 n. 14, 69 L.Ed.2d 59 (1981) (a prison's internal security is normally left to the discretion of prison officials).

The government conceded at trial, however, that once a threat of violence against Mr. Barrett was brought to the attention of USPL officials, they were required to investigate the threat and determine whether Mr. Barrett was in danger.[9] Evidence at trial indicated that an investigation did take place, and that USPL officials subsequently made a decision to release Mr. Barrett from detention. Based on the inability to corroborate that any threat against Mr. Barrett's life in fact existed, and based on Mr. Barrett's own reassurance that he was not in danger and that he did not wish to remain in detention, USPL officials permitted his release from detention.

Lieutenant Pierce testified that there was an investigation, but that the threat of retaliation could not be substantiated. Mr. Trott testified that the inmate who told him about the threat was new to Leavenworth, had never offered confidential information before, and, thus, could not be considered a reliable informant.[10] An internal memorandum written by Lieutenant Savitch indicates that Mr. Barrett was being held in administrative detention pending a review of the September 7th incident and the threat of retaliation by the Muslims. On September 11, 1990, B.F. Thomas, an investigator, wrote a memo stating he could not gather substantial evidence that an assault took place on September 6th between Mr. Barrett and his cellmate. Also in the record, is a form signed by Mr. Barrett in which he requests a return to the general population and states that he does not fear for his safety.

Thus, even if there existed a "mandatory directive" requiring an investigation under the circumstances of this case,[11] the court is persuaded that USPL officials did, in fact, perform an investigation. The only issue is whether USPL officials failed to continue any investigation and whether continuing the investigation would have been fruitful in preventing Mr. Barrett's death. Any decisions stemming from this investigation were matters of choice, and necessarily required the official to use discretion. *See Gray v. Bell*, 712 F.2d 490, 516 (D.C.Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984) (prosecutor's decisions during investigation were not meaningfully distinguishable from the ultimate decision to prosecute and his entire course of conduct was protected by the discretionary function exception); *Payton v. United States*, 679 F.2d 475, 481 (5th Cir.1982) (plaintiff must show defendant breached a duty sufficiently separable from the decision-making function).

Next, the court must decide whether the decision to release Mr. Barrett and to end the investigation was one based on policy. *See Johnson v. United States*, 949 F.2d 332, 335 (10th Cir.1991). Program statements and comprehensive regulations establish government policy regarding the internal securi-

**8.** No other program statement specifically cited by the plaintiff and introduced into evidence at trial remotely indicates that USPL officials were required take actions that were not, in fact, taken. No provision cited by plaintiff states that prison officials "shall" or "must" perform a certain act relevant to the circumstances of this case.

**9.** It should be noted that where a government official or employee is performing a discretionary function, the fact that he or she may perform it negligently does not render the exception inapplicable. *Dalehite v. United States*, 346 U.S. 15, 33, 37, 73 S.Ct. 956, 966–67, 969, 97 L.Ed. 1427 (1953); *Berkovitz*, 486 U.S. at 539, 108 S.Ct. at 1960.

**10.** The court found that both Mr. Pierce and Mr. Trott were credible witnesses and considered their testimony reliable.

**11.** It is unclear whether plaintiff is arguing that there is a statute or regulation requiring an investigation or whether she contends it falls within duty set out in 18 U.S.C. § 4042. It is unnecessary to reach this issue, however, because even if the program statements and regulations cited by plaintiff could be construed to mandate an investigation, the court finds as a matter of fact that such an investigation took place. There is no program statement or regulation specifying the length or scope of an investigation.

ty of federal prisons. Where these regulations allow a federal employee discretion, there is a strong presumption that the discretion authorized is a result of or is inextricably tied to the underlying policy considerations of the regulatory scheme. *Gaubert*, 499 U.S. at 324–25, 111 S.Ct. at 1274–75.[12]

The court finds that the prison regulations and the statutes with which they conform are grounded in social, political and economic policy, and, thus, decisions made in accordance with these regulations are protected by the discretionary function exception. The decision to keep Mr. Barrett in detention or to allow, at his request, his return to the general population, was, according to Bureau of Prison regulations, a decision left to the discretion of USPL officials. Balancing the concerns of inmate security with the right of a prisoner to circulate and socialize with some degree of freedom within the general population of a prison is a matter that, without doubt, involves many policy considerations. This court has been presented with no evidence to indicate (nor has the plaintiff alleged specific grounds upon which this court could conclude) that the decisions at issue in this case were not motivated by or grounded in regulatory policy or were not required to effectuate the purposes of an overall regulatory scheme.

In conclusion, the court finds that although the USPL officials in this case had a mandatory duty to protect Mr. Barrett and other inmates, decisions made as to how best to fulfill that duty are protected by the discretionary function exception, and Ms. Barrett's claims are dismissed for lack of subject matter jurisdiction. *Accord Miller v. United States*, 992 F.2d 1223, 1993 WL 137103, *1 (10th Cir.1993) ("The decisions of prison officials during a fight between two groups of prisoners, by whatever name, and however characterized, remains the type of decision protected by the discretionary function exception to the FTCA."); *Horta v. Sullivan*, 4 F.3d 2, 21–22 (1st Cir.1993) (although law

enforcement agents have a mandatory duty to enforce the law, decisions as to how best to fulfill that duty are protected by the discretionary function exception); *Attallah v. United States*, 955 F.2d 776, 784 (1st Cir. 1992) (decision by United States Customs agents not to stop and search a particular passenger falls within the discretionary function exception of the FTCA because the applicable statute and regulations authorize, but do not obligate, the agents to search passenger); *Buchanan v. United States*, 915 F.2d 969, 974 (5th Cir.1990) (prison warden's and staff members' "minute-to-minute decision making" under circumstances of riot protected); *Taitt v. United States*, 770 F.2d 890, 893–94 (1985) (officials' determination to admit participant into witness protection program and failure to evaluate his past behavior or perform psychological evaluation involved matters of discretion for which officials could not be held liable).

## IV. Eighth Amendment Claim

▮▮▮▮▮ An inmate can state a *Bivens* claim under the Eighth Amendment by establishing that prison personnel acted with "deliberate indifference" in creating or causing a condition that violates the Eighth Amendment of the Constitution. *See Leer v. Murphy*, 844 F.2d 628, 631 (9th Cir.1988); *Twyman v. Crisp*, 584 F.2d 352, 354 (10th Cir.1978). Plaintiff has not met her burden to show that USPL officials acted with deliberate indifference. Moreover, the court is persuaded by evidence the government was able to produce through plaintiff's witnesses that USPL officials acted with some degree of care, and that, at worst, their failure to perform a more thorough investigation of the September and October incidents was negligent. In addition, the court finds that this cause of action must be dismissed as a matter of law, because plaintiff has not properly pursued her claim in that she has failed to sue any prison official in an individual capacity. *See Bivens v. Six Unknown Named*

12. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion ... The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *See Gaubert*, 499 U.S. at 324–25, 111 S.Ct. at 1274–75 (1991).

*Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 390–91, 91 S.Ct. 1999, 2001–02, 29 L.Ed.2d 619 (1971).

## V. Notice of Claim

 During a hearing on January 11, 1994, the court granted in part and denied in part defendant's motion for leave to file a dispositive motion out of time. It then considered defendant's dispositive motion and ordered the dismissal of plaintiff's survival claim. The court stated, however, that in the interests of judicial economy, it would set forth its reasoning in its opinion and final judgment after trial. Thus, the court herein explains its ruling.

Defendant argued that Count II of plaintiff's complaint, a survival claim, should be dismissed for lack of jurisdiction. It argued that plaintiff failed to give notice of this claim to the appropriate administrative agency so that it could review the claim, and, thus, had not exhausted all administrative requirements as required by law.

 The FTCA states that an action shall not be instituted against the United States for damages caused by the negligent or wrongful act or omission of a government employee unless a plaintiff first presents the claim to an appropriate agency and the agency denies liability. *Id.* It requires that the agency be allowed up to six months to reach a final disposition on the filed claim. *Id.* A district court must dismiss a claim under the FTCA if it was filed before it was presented to the agency and before the full six months permitted for disposition elapses. *McNeil v. United States,* —— U.S. ——, —— ––––, 113 S.Ct. 1980, 1982–84, 124 L.Ed.2d 21 (1993).

Plaintiff's administrative claim can be found in a letter dated April 5, 1991. Although the letter states a claim for wrongful death, as found in Count I of her complaint, there is no mention, explicit or implicit, of a survival claim for Mr. Barrett's pain and suffering. Similarly, the Bureau of Prison's response to her letter makes no mention of a survival claim.

The issue thus becomes whether the Bureau of Prisons had constructive notice of the survival claim by virtue of the notice of a claim for wrongful death. A recent case is instructive. In *Frantz v. United States,* 791 F.Supp. 445 (D.Del.1992), the court examined whether notice of a survival claim under the FTCA was sufficient to offer constructive notice of a claim for wrongful death, and held that it was not. The court reasoned that even though the government might have knowledge that multiple causes of action exist, it is not required to speculate as to whether multiple claims are being asserted. *Frantz,* 791 F.Supp. at 453. Because plaintiff bears the burden of establishing that a proper administrative claim has been filed, and because wrongful death and survivorship claims are separate and distinct causes of action, plaintiff must show that it gave specific notice of the claimants and the nature of the injury as to both causes of action, or face dismissal for lack of jurisdiction. *Id.* at 450–51.

Plaintiff herein did not notify an appropriate agency that she was bringing a claim on behalf of the estate of Erick Barrett, nor did she represent an intent to recover for his pain and suffering. Nothing in her letter to the Bureau of Prisons indicates such an intent. No survival claim was presented, investigated, or denied. Thus, the court found that plaintiff failed to follow the guidelines of the FTCA, and her survival claim was dismissed before trial.

## VI. Conclusion

**IT IS THEREFORE ORDERED BY THE COURT** that the clerk enter judgment in favor of defendant, the United States of America, in accordance with this opinion.

**IT IS SO ORDERED.**