Faustino CALDERON, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 95 C 357.

United States District Court,
N.D. Illinois,
Eastern Division.

April 16, 1996.

John M. Beal, Chicago, IL, Ralph Dwayne Davis, Chicago, IL, for plaintiff.

Eileen M. Marutzky, United States Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Faustino Calderon ("Calderon") a former federal inmate who was the unfortunate victim of a vicious assault by his former cellmate, has filed this lawsuit against the United States pursuant to the Federal Tort Claims Act asserting that the United States was negligent in failing to prevent the attack. Presently pending before this Court is the United States' motion to dismiss or, in the alternative, for summary judgment. This motion asserts the discretionary function defense to the Federal Tort Claims Act, under which the United States is protected from liability if the prison officials' actions involved discretion and were related to considerations of public policy, even if the officials abused their discretion or were negligent. For the reasons which follow, the Court concludes that it must grant the pending motion.

### RELEVANT FACTS

The relevant facts are not in dispute. On January 13, 1993, Faustino Calderon was an inmate at a federal prison located in Oxford, Wisconsin ("FCI Oxford"). His cellmate was Luis Perez. (United States' Statement of Material Facts ("Stmt.Facts") ¶ 5). Calderon had provided information to the government relating to criminal activity by a relative of Perez named Jose Rivera. (Stmt. Facts ¶ 6.) Perez knew or believed that Calderon had provided information to the government about his relative and on several occasions had threatened Calderon and extorted money from him. (Stmt. Facts ¶ 7).

Calderon told several Bureau of Prisons ("BOP") personnel at FCI Oxford about the threats by Perez, including his supervisor at his prison job, his counselor, his case manager, and his supervisory case manager. (Stmt. Facts ¶ 8).

On January 13, 1993, as Calderon was preparing to take a shower, Perez grabbed him and then attacked him with a homemade knife or razor knife. (Stmt. Facts ¶ 9). As a result of the attack, Calderon's ear was cut off and he was extensively cut about the head and shoulders. (Stmt. Facts ¶ 10). Calderon was taken to a hospital, his ear was reattached, and he received over 100 stitches. (Stmt. Facts ¶ 11). Perez was convicted of assault for his attack on Calderon and ultimately received a ten year sentence. See United States v. Perez., 79 F.3d 79, (7th Cir.1996). (Stmt. Facts ¶ 12). In February, 1994, Calderon filed an administrative claim for this incident with the Bureau of Prisons, which denied the claim in August, 1994. (Stmt. Facts ¶ 13).

### STANDARDS

The United States seeks the dismissal of this action based on a variety of documents outside the pleadings and the plaintiff has opposed that effort in the same manner. However, this does not automatically warrant conversion of the motion to one for summary judgment, because the United States is asserting that the court lacks jurisdiction over the plaintiff's claims. Crawford v. United States, 796 F.2d 924, 928 (7th Cir.1986); Castor v. United States, 883 F.Supp. 344, 348 (S.D.Ind.1995). In this situation the district court is entitled to receive appropriate evidentiary submissions—"any rational mode of inquiry will do." Crawford, 796 F.2d at 929. It must then decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue. "The only exception is in instances when the jurisdictional issue is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'" Osborn v. United States, 918 F.2d 724, 730 (8th Cir.1990) (quoting Crawford,

796 F.2d at 929). That exception is not triggered by the facts of this case.

Since the United States seeks a case-dispositive outcome based on its motion, the plaintiff has been properly notified of the proper manner in which to contest the government's evidentiary materials and the consequences of failing to do so. *English v. Cowell,* 10 F.3d 434 (7th Cir.1993). The plaintiff has been afforded "a full opportunity to present contradicting affidavits or materials in order to cure a jurisdictional or party defect not capable of being resolved on the words of the complaint." *Id.* at 437 (citing *Fountain v. Filson,* 336 U.S. 681, 69 S.Ct. 754, 93 L.Ed. 971 (1949)). Indeed, the plaintiff has submitted such materials to the court for its consideration in ruling on the instant motion.

### ANALYSIS

■ Generally, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 *et seq.* allows the United States to be held liable for negligence to the same extent as a private individual under like circumstances. 28 U.S.C. § 2674. Further, it is well settled that under the FTCA, federal inmates may sue the United States for injuries sustained while incarcerated in federal prisons. *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1852–53, 10 L.Ed.2d 805 (1963). However, the FTCA is a limited waiver of the United States' sovereign immunity, which is further restricted by the discretionary function exception found at 28 U.S.C. § 2680(a). The discretionary function exception provides that the FTCA does not apply to:

> [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

■ The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v.*

*Varig Airlines,* 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). The creation of the discretionary function exception reflects a congressional intent "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort[ ]" and "to protect the Government from liability that would seriously handicap efficient government operations." *Id.* at 814, 104 S.Ct. at 2765; *see also Rothrock v. United States,* 62 F.3d 196, 198 (7th Cir.1995); *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir.1995); *Cassens v. St. Louis River Cruise Lines, Inc.,* 44 F.3d 508, 511 (7th Cir.1995).

■ In determining whether the discretionary function exception applies, "two requirements must be met: (1) the action complained of must involve an element of judgment or choice; and (2) the action must relate to governmental actions or decisions involving considerations of public policy." *Rothrock v. United States,* 62 F.3d 196, 198 (7th Cir.1995) (citing *United States v. Gaubert,* 499 U.S. 315, 322–23, 111 S.Ct. 1267, 1273–75, 113 L.Ed.2d 335 (1991) and *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988)); *see also Bailor,* 51 F.3d at 685; *Cassens,* 44 F.3d at 512; *Barrett v. U.S.,* 845 F.Supp. 774, 780 (D.Kan.1994).

■ Applying the foregoing considerations to this action, "if it is determined that the actions of the Bureau of Prisons involved discretion [and that the actions were related to considerations of public policy], the discretionary function exception will serve to protect the government from suit, even if the Bureau of Prisons abused its discretion or was negligent in the performance of its discretionary functions." *Bailor,* 51 F.3d at 685 (citation omitted).

As the Supreme Court has explained, if a statute, regulation, or policy mandates particular conduct and a federal employee violates the mandatory prescription, "there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *Gaubert,* 499 U.S. at 324, 111 S.Ct. at 1274. On the other hand, if

a statute, regulation, or policy allows the employee discretion, there is a strong presumption that the employee's actions will be protected by the discretionary function exception. *Id.*

■ In the present case, the actions taken by the BOP are within the scope of the discretionary function exception. There are no regulations or policies that circumscribe BOP's exercise of discretion in determining whether to remove an inmate from a cell for purposes of an inmate's security or protection. There are two regulations, 28 C.F.R. §§ 541.22(a) and 541.23, and a Department of Justice "Program Statement"[1] that are arguably applicable to the present case.

Section 541.22(a) provides in relevant part that:

[t]he Warden *may* ... place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to ... self ... other inmates ... or to the security or orderly running of the institution and when the inmate:

\* \* \* \* \* \*

(5) Requests admission to administrative detention for the inmate's own protection, or *staff determines* that admission to or continuation in administrative detention is necessary for the inmate's own protection (*see* § 541.23).

28 C.F.R. § 541.22(a) (emphasis added). Section 541.23 provides in relevant part that:

(a) Staff *may* consider the following categories of inmates as protection cases;

\* \* \* \* \* \*

(2) Inmate informants;

\* \* \* \* \* \*

(8) Inmates about whom staff has good reason to believe the inmate is in serious danger of bodily harm.

(d) Where appropriate, staff shall first attempt to place the inmate in the general population of their particular facility.

28 C.F.R. § 541.23 (emphasis added).

The Court's reading of the two regulations and the Program Statement reveals a general policy to grant wide discretion to officials of the BOP in determining when to remove an inmate from the general prison population. *See Barrett,* 845 F.Supp. at 780 ("There is no mandatory language in the program statement, nor does the statement identify any specific criteria, which if analyzed would *mandate* a certain result.") (emphasis in original). The regulations and Program Statement do not mandate a particular result but, rather, provide criteria for BOP officials to consider in determining whether to segregate a given inmate. *See* Declaration of Mark Bezy, ¶¶ 2-7. BOP officials must exercise judgment and choice in determining whether to remove an inmate from the general prison population.

Calderon asserts that the government's discretion was limited because it is undisputed that Calderon told several BOP personnel about Perez's threats in advance of his assault on Calderon. In particular, Calderon asserts that his prior complaint imposed nondiscretionary obligations upon BOP personnel to take disciplinary action against Perez. Calderon cites to 28 C.F.R. § 541.10(b)(2), which states:

Staff shall take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within Bureau rules and institution guidelines and to promote a safe and orderly institution environment.

Calderon asserts that the complained of threatening behavior by Perez violated 28 C.F.R. § 541.13, Table 3, Code 203 and 28 C.F.R. § 541.13, Table 3, Code 204 and therefore the BOP was required to take action against Perez that may have protected Calderon from the attack. This argument, of course, makes a considerable assumption regarding proximate cause because it assumes that Perez would have been disciplined in a

---

1. Program statements identify "the policies and procedures prescribed" for the care and control of inmates within the prison system. *Barrett,* 845 F.Supp. at 780; *see* Declaration of Mark Bezy and Program Statement No. 5250.7, Chapter 9.

manner that would have prevented him from assaulting Calderon. Nothing in the record supports this assumption.

However, there is a more basic deficiency in Calderon's arguments than his proximate cause assumption. The BOP disciplinary regulations relied upon by Calderon do not impose mandatory duties upon the BOP under the circumstances presented here. Instead, the disciplinary regulations relied upon by Calderon must be read in light of 28 C.F.R. § 541.14(a), which provides in relevant part:

> Incident Report. The Bureau of Prisons encourages informal resolution (requiring consent of both parties) of incidents involving violations of Bureau regulations. However, *when staff witnesses or has reasonable belief that a violation of Bureau regulations has been committed by an inmate,* and when staff considers informal resolution of the incident inappropriate or unsuccessful, staff shall prepare an Incident Report and promptly forward it to the appropriate Lieutenant. (Emphasis added).

Thus, while there is no question that all severe disciplinary violations actually witnessed by the BOP need to be documented in an incident report, this incident report regulation specifically places discretion in the BOP for all unwitnessed incidents. Where BOP personnel have not actually witnessed the severe disciplinary violations, as is the case here, BOP personnel must determine whether there is "a reasonable belief that a violation of Bureau regulations has been committed by an inmate." 28 C.F.R. § 541.14(a). This determination is inherently discretionary.

In this case, the determination boiled down to a subjective determination about the overall credibility of Calderon's claims. Unfortunately for Calderon, relevant BOP personnel incorrectly determined that Calderon's reports of Perez's threats were not worthy of belief. This decision, in hindsight, was absolutely wrong. Yet, the fact that an egregious error occurred does not change the inescapable conclusion that discretionary judgment was involved in the decision not to charge Perez with a disciplinary violation or segregate Calderon.

The Court's analysis would be different if BOP personnel had objective evidence of Perez's plans to assault Calderon which did not require a determination concerning Calderon's credibility. For example, if BOP personnel had witnessed these threats or had evidence of a prior incident between Perez and Calderon this would establish that BOP officials objectively knew of potential problems prior to the assault. *See Artis v. Petrovsky,* 638 F.Supp. 51, 53 (W.D.Mo.1986). In *Artis,* the court noted that to demonstrate that the government breached its duty of ordinary care, an inmate must establish three factors. The inmate must show that prior to the assault: (1) he informed prison staff of a problem between himself and his assailant; (2) he requested protective status and (3) extraordinary incidents had occurred near the time of the assault or prison staff had observed group tension indicating danger to the security of the victim. 638 F.Supp. at 53. In this case, Calderon has established the first two *Artis* factors but has failed to establish the third factor.

Even though BOP officials exercise discretion in determining when to segregate an inmate from the general prison population, the action taken as a result of their determination will be protected by the discretionary function exception only if "the action ... relates[s] to considerations of public policy." *Bailor,* 51 F.3d at 685. Commenting on the exception's "policy" requirement, the Supreme Court has stated that:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the

nature of the actions taken and on whether they are susceptible to policy analysis. *Gaubert,* 499 U.S. at 324–25, 111 S.Ct. at 1274–75.

This Court concludes that public policy factors also support the application of the discretionary function defense to this case. Unfortunately, the reality is that inmates often seek to mislead prison officials about perceived threats by other inmates for various reasons including the chance to change cell locations. If this Court were to hold that a simple assertion of a serious allegation against another inmate should automatically result in the required movement of the complaining inmate, BOP personnel would be placed in an extremely difficult and unworkable position. It must be within the sound discretion of prison officials to determine whether an inmate's complaints about another inmate's behavior establish a "reasonable belief that a violation of Bureau regulations has been committed by an inmate," 28 C.F.R. § 541.14(a), warranting administrative segregation or other disciplinary action.

In the present case, the conduct of which plaintiff complains, even if negligent, is clearly "the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Id.; Castor,* 883 F.Supp. at 353–54 ("Because BOP officials exercise discretion in determining how best to protect and provide for prisoners, and because that discretion is animated by policy considerations, its decisions and actions challenged here cannot form the basis of a FTCA claim."); *Barrett,* 845 F.Supp. at 782 ("[T]he prisons regulations and the statutes with which they conform are grounded in social, political and economic policy, and, thus decisions made in accordance with these regulations are protected by the discretionary function exception. Balancing the concerns of inmate security with the right of a prisoner to circulate and socialize with some degree of freedom within the general population of a prison is a matter that, without doubt, involves many policy considerations."). The declaration of Mark Bezy, Correctional Services Administrator for the North Central Regional Office, demonstrates that "the process by which staff members evaluate whether an inmate's safety is so jeopardized that he or an alleged perpetrator should be removed from the general prison population is grounded in economic, social and political policies." (Declaration of Mark Bezy, ¶¶ 7–13.)

Once it is determined that the actions of the Bureau of Prisons involved discretion grounded in policy considerations, the discretionary function exception serves to protect the government from suit, even if the Bureau of Prisons abused its discretion or was negligent in the performance of its discretionary functions. *Bailor,* 51 F.3d at 685 (negligent placement of prisoner with violent assault history in halfway house was protected under discretionary function exception). Unfortunately, this is exactly the situation that this case presents.

## CONCLUSION

Because BOP officials exercised judgment and choice in this matter, which is grounded in policy considerations, this Court is required to apply the discretionary function exception to the FTCA. Despite this Court's overall concern for the severe injuries received by Calderon, this Court has concluded that it lacks jurisdiction over his negligence claims. Therefore, the Court must grant the United States' motion to dismiss. This case is dismissed with prejudice, both sides to bear their own costs.