No. 69,355

Julie Delaney, *Plaintiff*, v. Victor R. Cade, D.O., St. Joseph Memorial Hospital, and Central Kansas Medical Center, *Defendants*.

(873 P.2d 175)

Opinion filed April 22, 1994.

*Dwight A. Corrin,* of Dwight A. Corrin. Chartered, of Wichita, argued the cause and was on the brief for plaintiff.

*Robert G. Martin II,* of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause, and *Alisa M. Arst,* of the same firm, was with him on the brief for defendant Victor Cade.

*Brian C. Wright,* of Turner and Boisseau, Chartered, of Great Bend, argued the cause and was on the brief for defendants St. Joseph Memorial Hospital and Central Kansas Medical Center.

*Marta Fisher Linenberger,* and *Wayne T. Stratton,* of Goodell, Stratton, Edmonds & Palmer, of Topeka, were on the brief for *amici curiae* Kansas Hospital Association, Kansas Medical Society, and Kansas Association of Defense Counsel.

*John E. Shamberg, Lynn R. Johnson, Victor A. Bergman, David R. Morris,*and *Steven G. Brown,* of Shamberg, Johnson, Bergman & Morris, Chartered, of Overland Park, were on the brief for *amicus curiae* Kansas Trial Lawyers Association.

The opinion of the court was delivered by

HOLMES, C.J.: This case is before the court on questions certified by the United States Court of Appeals for the Tenth Circuit pursuant to the Uniform Certification of Questions of Law Act, K.S.A. 60-3201 *et seq.*

Chief Judge Stephanie K. Seymour, Circuit Judge presiding, has certified to this court the following questions:

"1. Does Kansas recognize a cause of action for loss of chance of recovery?

"2. If so, what are the standards of proof for such a claim?"

Although the facts of the case are unnecessary for our determination of the legal questions submitted, we deem it advisable to reiterate them as they may be helpful in providing background for a proper understanding of the issues and our resolution of them. The facts, as set forth by the certifying court, read:

"On November 22, 1986, plaintiff Julie Delaney's car collided with another automobile in the State of Kansas. As a result of the accident, the plaintiff suffered numerous injuries, including a transected aorta, lacerated knees, three fractures in the right arm, a broken nose, lacerations on the face, and neck fractures. An ambulance transported her to St. Joseph Memorial Hospital in Larned, Kansas. When she arrived at St. Joseph, the plaintiff was complaining of chest pain. Dr. Cade, a member of St. Joseph's staff and the physician on call on November 22, began treating her. The plaintiff alleges Dr. Cade commenced suturing the lacerations on her knees without performing a physical examination, ordering x-rays, or starting an IV.

"After two hours at St. Joseph, Dr. Cade transferred her to Central Kansas Medical Center (CKMC) in Great Bend. Ms. Delaney alleges she had feeling and movement in her legs when she left St. Joseph but had lost that feeling by the time she arrived at CKMC. She also asserts CKMC was not equipped to provide her with the necessary medical treatment. Doctors at CKMC provided medical care to Ms. Delaney and then transferred her to the University of Kansas Medical Center in Kansas City.

"At K.U. Medical Center, a physician performed an aortagram which showed the plaintiff had a transected aorta which had thrombosed. The physician operated on the plaintiff to repair the transected aorta. Plaintiff claims that as a result of the thrombosed aorta she is permanently paralyzed. She contends Dr. Cade's treatment, and his delay in transferring her to a facility that was equipped to treat her injuries, deprived her of a significant chance to better recover from her permanent injuries.

"The plaintiff supports her claims with the deposition testimony of three expert witnesses, Dr. Moran, Dr. Caliendo, and Dr. Harrison. These experts agree the thrombosis of her aorta caused the plaintiff's paralysis. Between thirty and sixty separate factors predispose an individual to thrombosis, and Dr. Moran stated, it is not known why the plaintiff's aorta thrombosed.

"The defendants contend Dr. Harrison was the only witness to testify regarding any loss of chance the plaintiff may have suffered. In his deposition testimony, Dr. Harrison explained ten percent of patients with thoracic aortic

injuries like Ms. Delaney's will suffer permanent paralysis regardless of how the injury is managed. If the plaintiff was in that ten percent, she would have been a paraplegic no matter how much time passed between the accident and surgery. In addition, Dr. Harrison testified he had no way of determining whether the plaintiff was in that ten percent or in the other ninety percent. However, Dr. Harrison did state that the plaintiff's risk of cord injury was increased five to ten percent by the prolonged period of shock that she suffered prior to surgery.

"The United States District Court for the District of Kansas granted partial summary judgment for Dr. Cade, holding Kansas did not recognize the doctrine of significant chance of recovery. *Delaney v. Cade*, 756 F. Supp. 1476, 1484 (D. Kan. 1991). Ms. Delaney has appealed this decision to the United States Court of Appeals for the Tenth Circuit."

## QUESTION ONE: DOES KANSAS RECOGNIZE A CAUSE OF ACTION FOR LOSS OF CHANCE OF RECOVERY?

At the outset, we point out that the loss of chance of recovery theory in medical malpractice cases applies to two ultimate results: first, the extent to which the alleged malpractice reduced an already injured or ill person's chance of surviving the injury or illness and, second, the extent to which the alleged malpractice reduced an already injured or ill person's chance of a better recovery from the injury or illness. In the first circumstance, the patient fails to survive and the loss suffered is the lost chance of surviving the preexisting injury or illness or at least a lost chance of a substantial increase in the length of such survival. Most of the recorded cases involve factual scenarios in which the patient died when there was a possibility of survival or died sooner than would otherwise have resulted if properly treated. Throughout this opinion such cases will simply be referred to as loss of survival cases. In the second factual circumstance, the patient survives the preexisting injury or illness but fails to make the extent or quality of recovery that might have resulted absent the alleged medical malpractice. We will refer to such cases simply as loss of better recovery cases.

In either event, the gravamen of the cause of action is negligence and, as in all medical malpractice actions, it is necessary for the plaintiff to prove three elements by a preponderance of the evidence: (1) The physician, or other health care provider, was negligent in the treatment of the patient; (2) the negligence resulted in harm to the patient; and (3) the plaintiff suffered dam-

ages. *Cleveland v. Wong,* 237 Kan. 410, 416, 701 P.2d 1301 (1985). Additionally, we note that the loss of chance cause of action was recognized by this court in loss of survival cases nearly 10 years ago. *Roberson v. Counselman,* 235 Kan. 1006, 686 P.2d 149 (1984). Thus, the narrow issue now before us is whether the loss of chance cause of action is also applicable to cases involving the loss of a chance for a better recovery. The United States District Court in the present case found *Roberson* was limited to death cases and, primarily on public policy grounds, declined to extend or recognize the loss of chance doctrine to cases not involving death. We do not find the reasoning of the district court to be persuasive.

While a cause of action for the loss of a chance has been recognized in nonmedical cases since at least 1911, *Chaplin v. Hicks,* [1911] 2 K.B. 786 (C.A.), the doctrine did not gain much impetus in medical malpractice cases until publication in 1981 by Professor Joseph H. King, Jr., of his extensive article *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L. J. 1353 (1981).

The loss of chance theory arises in medical malpractice cases wherein the patient is suffering a preexisting injury or illness which is aggravated by the alleged negligence of the doctor or health care provider to the extent that the patient dies, when without negligence there might have been a substantial chance of survival or the actual recovery is substantially less than it might have been absent the alleged malpractice. In essence, the theory comes into play when the traditional probability standard of causation is not met.

The loss of chance theory began receiving broad support and acceptance after the publication of Professor King's article. In his article, Professor King presents various arguments in support of the proposition that a "lost chance" for a better recovery or survival has value and should be compensated when a physician's negligence has destroyed or substantially reduced such a chance.

"It is the thesis of this article that the loss of a chance of achieving a favorable outcome or of avoiding an adverse consequence should be compensable and should be valued appropriately, rather than treated as an all-or-nothing prop-

osition. Preexisting conditions must, of course, be taken into account in valuing the interest destroyed. When those preexisting conditions have not absolutely preordained an adverse outcome, however, the chance of avoiding it should be appropriately compensated even if that chance is not better than even." 90 Yale L.J. at 1354.

Thus, the issue of whether a court should adopt the loss of chance theory is essentially one of adopting a standard of causation which departs from the traditional standard applied in negligence cases. On the general question of whether to recognize the loss of chance cause of action, there are many cases on both sides of the issue. Annot. 54 A.L.R.4th 10.

In *Roberson v. Counselman*, 235 Kan. 1006, we recognized the lost chance of recovery theory in a medical malpractice case in which the patient's chance of survival was substantially reduced. Plaintiff's husband sought treatment from his chiropractor, Dr. Counselman, complaining of pain in the left shoulder area and left side causing hard breathing and chest ache. Although defendant chiropractor was aware of Roberson's prior heart history, which included medication and treatment for a heart condition during the past 10 years, defendant failed to recognize that Roberson was exhibiting symptoms of heart disease and failed to refer him for appropriate medical treatment. Instead, defendant administered two chiropractic adjustments and released him. Later that evening, Roberson suffered a heart attack and died at his home. Roberson's widow sued defendant, alleging that he was negligent in failing to refer her husband to a cardiologist. Specifically, she contended that defendant's negligence substantially reduced her husband's chances of surviving the heart attack.

The district court granted summary judgment for defendant, ruling the traditional negligence standard of causation applied and that plaintiff had failed to demonstrate that "but for defendant's negligence, deceased would have had a better than even chance of surviving the heart attack." 235 Kan. at 1013. In support of her argument, plaintiff retained three medical experts who testified regarding the impact defendant's negligence had on the deceased's chances of surviving the heart attack. The first expert, a chiropractor, opined that defendant breached a duty owed his

patient in not referring him to a medical specialist. The second expert, a cardiologist, testified that defendant's act increased the patient's chance of dying from 19 percent to 25 percent, while the second cardiology expert testified that defendant's patient had a 40 percent chance of survival with treatment and no chance of survival without treatment. In granting defendant's motion for summary judgment, the district court concluded that because plaintiff's evidence demonstrated that the deceased's chances of survival were only 40 percent at best, plaintiff failed "to establish a submissible jury issue of causation," notwithstanding defendant's negligence. 235 Kan. at 1013.

In reversing the district court's ruling, this court noted that summary judgment was granted due to plaintiff's failure in establishing to a reasonable probability a causal connection between defendant's negligence and the death of her husband and not because of insufficient evidence demonstrating that defendant had breached a duty owed to the deceased. Following this discussion, the court reviewed fundamental principles of causation, recognizing that the case afforded the court its first opportunity to consider the loss of chance theory in a medical malpractice setting.

In examining the theory, the court reviewed various case law, ranging from jurisdictions which refused to recognize the theory (see *Cooper v. Sisters of Charity*, 27 Ohio St. 2d 242, 272 N.E.2d 97 [1971]) to those which did based upon any increased risk as set forth in Restatement (Second) of Torts § 323(a) (1963) when the harm was due to defendant's negligence (see *Jones v. Montefiore Hospital*, 454 Pa. 410, 431 A.2d 920 [1981]). Additionally, we note that *Jones* was a case which recognized the theory of loss of chance in a non-death case. In *Jones*, plaintiff sued defendant physician for both failing to properly diagnose her breast cancer and the resulting harm caused from the delay in treatment. In reversing the jury verdict favoring defendant, the Pennsylvania Supreme Court held that the district court erred in charging the jury on the traditional "all or nothing" theory of proximate cause. Instead, the court adopted § 323 of the Restatement (Second) of Torts, which allows for recovery in instances where the defendant

has increased the risk of harm actually sustained by the plaintiff. In doing so, the Pennsylvania court relaxed the usual sufficiency of proof necessary in order to place the issue of causation before the jury.

After reviewing case law from other jurisdictions, and noting the different approaches courts have taken regarding this theory, the *Roberson* court rejected the traditional greater than 50 percent argument and recognized that "lost chance" was a compensable injury. In setting forth the standards of proof necessary in a loss of chance claim, the court stated:

"The question of causation in cases involving negligent treatment of a potentially fatal condition (including failure to refer the patient to an appropriate specialist) is generally a matter to be determined by the finder of fact where the evidence has established the patient had an appreciable chance to survive if given proper treatment. In making the determination, the finder of fact should take into account both the patient's chances of survival if properly treated and the extent to which the patient's chances of survival have been reduced by the claimed negligence." 235 Kan. at 1020.

In adopting a theory of recovery which many consider to be a radical departure from traditional standards of proof, the court reasoned:

"There are sound reasons of public policy involved in reaching this result. The reasoning of the district court herein (which is similar to the extreme position taken in *Cooper v. Sisters*, 27 Ohio St. 2d 242), in essence, declares open season on critically ill or injured persons as care providers would be free of liability for even the grossest malpractice if the patient had only a fifty-fifty chance of surviving the disease or injury even with proper treatment. Under such rationale a segment of society often least able to exercise independent judgment would be at the mercy of those professionals on whom it must rely for life-saving health care." 235 Kan. at 1021.

*Donnini v. Ouano*, 15 Kan. App. 2d 517, 810 P.2d 1163, *rev. denied* 248 Kan. 994 (1991), is the only other Kansas appellate court case which has considered or discussed the loss of chance theory in a medical malpractice case. It clearly illustrates the distinction between the traditional greater than 50 percent probability standard of causation and the reduced standard applied under the loss of chance theory. Donnini, a 55-year-old pharmacist, consulted Dr. Will after experiencing an episode of gross he-

maturia (blood in the urine). Dr. Will, a general practitioner, hospitalized his patient and called in Dr. Ouano for consultation. Dr. Ouano performed certain diagnostic tests upon Donnini but failed to diagnose his kidney cancer. Ouano was released but suffered another episode of hematuria some months later. Thereafter, he was referred to a urologist who correctly diagnosed the kidney cancer. Despite treatment, Donnini died of the disease.

Donnini's widow and his estate sued Ouano for the wrongful death of Donnini.

"The decedent's family proceeded to trial against Ouano on two alternative theories. First, they proceeded on the theory that Ouano's negligence was the probable cause of decedent's injuries and death. Second, they proceeded on the theory that Ouano's negligence deprived the decedent of a substantial possibility of recovery from the cancer." 15 Kan. App. 2d at 519.

The jury found Ouano to be 41.7 percent at fault, Will 43.7 percent at fault, and the decedent 14.6 percent at fault. The jury also found Donnini's chances for survival had he received proper medical care to be 55 percent and that he had 0 percent chance of survival under the care actually given. In affirming the district court, the Court of Appeals stated:

"Ouano argues the jury's finding that Donnini had a 55 percent chance of survival if treated properly shows this is a loss of chance case. He argues the jury's finding of a 55 percent chance of survival was Donnini's chance of surviving cancer, not the raw likelihood that Ouano caused Donnini's death.

"Ouano relied on *Boody v. U.S.*, 706 F. Supp. 1458 (D. Kan. 1989), as support for his argument. *Boody* was a loss of chance case where a doctor failed to diagnose cancer. The plaintiff's cancer was misdiagnosed, and she was deprived of a 51 percent chance of surviving five years. She was not deprived of a 51 percent chance of being cured. 706 F. Supp. at 1465.

"In comparison, the jury's finding in the instant case on percentage of chance of survival is not limited to five years. Bass testified that, in March 1985, Donnini probably had a grade II, stage O, A, or B tumor, which has a good prognosis. By the time cancer was diagnosed, Donnini had a grade II, stage D tumor that had metastasized. Tumors are graded from I to IV. This indicates the tumor's rate of growth. Stage indicates the size of the tumor and where it is located. The stage increases as the tumor grows into deeper layers of tissue. Bass testified that a patient living five years is probably cured of the tumor for which he has been treated. Thus, Donnini had a greater than 50 percent chance of being cured according to Bass' testimony.

"A cause of action in which the patient had a greater than 50 percent chance of surviving does not fall under the causation rule from *Roberson*. The *Boody* court stated: '*Roberson* is part of a growing number of courts to adopt this type of causation test and recognize a cause of action for a *less than even chance of survival*.' (Emphasis added.) 706 F. Supp. at 1463." 15 Kan. App. 2d at 521-22.

The *Donnini* court then held:

"Where a jury finds it is more likely than not that a tortfeasor's conduct was a substantial factor in bringing about the harm, the tortfeasor's negligence is the cause in fact of the harm and the case is determined under traditional negligence law." Syl. ¶ 2.

"The loss of chance rule is an exception to the normal requirement of proving causation in a negligence cause of action. It applies when a doctor's negligence eliminates or substantially reduces a patient's chance of survival." Syl. ¶ 3.

"Where the jury finds a patient would have had a greater than 50 percent chance of surviving had he received proper medical treatment, traditional negligence rules apply, not the loss of chance rule." Syl. ¶ 4.

In addition to *Roberson* and *Ouano*, two Kansas federal district courts have considered the loss of chance of recovery theory. In *Boody v. U.S.*, 706 F. Supp. 1458 (D. Kan. 1989), plaintiff husband sued under the Federal Tort Claims Act, alleging negligence by an Air Force physician for failing to detect lung cancer from an x-ray of his wife, who subsequently succumbed to the cancer. Plaintiff's expert witness opined that the misdiagnosis, which resulted in a 14-month delay in discovery and treatment of the cancer, destroyed decedent's "fifty-one percent chance of surviving five years" from the lung cancer. 706 F. Supp. at 1459-60. In finding the expert testimony persuasive, the court awarded plaintiff lost chance damages under the loss of chance of survival theory recognized in *Roberson*.

*Borgren v. U.S.*, 716 F. Supp. 1378 (D. Kan. 1989), was another action under the Federal Tort Claims Act in which it was alleged that Army physicians had negligently failed to diagnose breast cancer from a mammogram. The doctors' misdiagnosis led to a three-year delay in discovering the cancer, which resulted in plaintiff undergoing a modified radical mastectomy. Relying on expert medical testimony, the court determined that the delay resulted in the plaintiff's loss of between a 30 and 57 percent chance of survival for 10 years. The facts of *Borgren* are unique from *Boody*

and from *Roberson* in that the patient survived and was granted damages not only for the decreased chance of survival but also for disfigurement, pain, suffering, and mental anguish. In essence, *Borgren* is more akin to a loss of better recovery case than to a loss of survival case even though the court referred to it as a loss of chance to survive.

The loss of chance of recovery theory basically entails the adoption of a different standard of causation than usually applies in negligence cases. As we said in *Roberson*, "causation is easier stated than explained." 235 Kan. at 1013. One authority attempts to explain the theory as follows:

"The 'loss of chance' doctrine has emerged over the past decade in response to the traditionally strict standard requiring proof that in reasonable probability the defendant's tortious conduct proximately caused the plaintiff's injury or death. Lost chance is a concept which presents a better method to evaluate the tort victim's diminished chance of survival or recovery when the evidence establishes the plaintiff's possibility of survival or cure is less than probable.

"Application of the lost chance principle in medical malpractice cases often involves circumstances where the plaintiff or patient was already suffering from some disease or disorder at the time the health care malpractice occurred. *Consequently, the loss of chance doctrine serves to fairly compensate the plaintiff for the tortious deprivation of an opportunity to live longer or recover from a physical injury or condition inflicted by the defendant's wrongful act or omission.* In the medical malpractice context, lost chance endeavors to allow a plaintiff to recover for the diminished chances of surviving or recovering from a disease or malady which results from the health care defendant's malpractice." (Emphasis added.) Keith, *Loss of Chance: A Modern Proportional Approach to Damages in Texas,* 44 Baylor L. Rev. 759, 760 (1992).

In the case now before this court, we are asked whether Kansas recognizes a cause of action for loss of chance for a better recovery in medical malpractice actions. The trial court made a determination, based on its reading of *Roberson*, that Kansas would not recognize such a cause of action in a loss of better recovery case even though we had recognized it in loss of chance for survival cases. We have found no support for the trial court's position. While it is true that several jurisdictions have refused to recognize such a cause of action in either type of case, we have found no jurisdiction which has applied the theory to one type of case and denied it in the other. Although many jurisdictions are like Kan-

sas, in that the issue has only come up in a loss of survival case or a loss of a better recovery case, none of those cases have indicated that the theory was exclusively limited to the one type of case being considered. As in most appellate opinions, these jurisdictions have merely refrained from expressing an opinion on a different factual situation not before the court for decision. In *Roberson* ,we were faced with the question of whether the loss of chance theory would apply in a loss of survival case. We determined it would and our opinion was limited to the case before us.

Because the facts in *Roberson* involved a loss of survival case in no way detracts from the public policy expressed in the opinion. In the oft-cited case of *Hicks v. United States,* 368 F.2d 626 (4th Cir. 1966), the court stated:

"When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass." 368 F.2d at 632.

We have found no authority or rational argument which would apply the loss of chance theory solely to survival actions or solely to loss of a better recovery actions and not to both. As noted by plaintiff in her brief: "There is certainly nothing in that *[Roberson]* rationale to justify leaving the season open on persons who suffer paralysis, organ loss, or other serious injury short of death while protecting only those who do not survive the negligence."

We acknowledge that the vast majority of cases we have reviewed involved death of the patient and a loss of chance of survival. We also recognize that the apportionment of damages may be more difficult in a loss of a better recovery case than in the cases resulting in death. However, the fact that most cases have involved death of the patient and that damages may be difficult to resolve in a loss of a better recovery case should not be grounds to refuse to recognize the doctrine when medical malpractice has substantially reduced a person's chance of a better recovery.

We conclude that the answer to question one: "Does Kansas recognize a cause of action for loss of chance of [a better] recovery?" is "Yes."

## QUESTION 2: IF SO, WHAT ARE THE STANDARDS OF PROOF FOR SUCH A CLAIM?

We now turn to the even more difficult question posed by the certifying court. As already discussed, the loss of chance theory is, essentially, one that allows an injured plaintiff to recover damages based upon a reduced standard of causation rather than the traditional one which requires the plaintiff to prove that it is more probable than not that the damage suffered was caused by the negligence of the defendant.

In *Boody*, the court stated the basic principles required to recover for negligence based upon medical malpractice as follows:

"3. Negligence in a medical malpractice action requires the plaintiff to prove three elements by a preponderance of the evidence: 1) a physician was negligent in his/her treatment of plaintiff; 2) the physician's negligence caused harm to plaintiff; and 3) plaintiff suffered damages. *Cleveland v. Wong*, 237 Kan. 410, 416, 701 P.2d 1301 (1985).

"4. The first element, negligence, is shown by demonstrating the violation of a duty. A physician has a duty to " 'use reasonable and ordinary care and diligence in the treatment of cases he undertakes, to use his best judgment, and to exercise that reasonable degree of learning, skill and experience which is ordinarily possessed by other physicians.' " *Durflinger v. Artiles*, 234 Kan. 484, 489, 673 P.2d 86 (1983) (quoting *Malone v. University of Kan. Medical Center*, 220 Kan. 371, 375, 552 P.2d 885, 888 (1976)). In a medical malpractice case, 'expert medical testimony is ordinarily required to establish negligence or lack of reasonable care on the part of a physician or surgeon in his *medical diagnosis,* performance of surgical procedures and care and treatment of patients.' *Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22 (1978) (emphasis added)." 706 F. Supp. at 1462-63.

Here, we are concerned with the causation element of a medical malpractice cause of action. The discussion of the standards of proof of the causation element in a loss of chance case is not only inextricably intertwined with any discussion of the theory itself but also with the damages resulting from the lost or diminished chance.

Although a variety of approaches has emerged among jurisdictions which have examined the loss of chance theory, three

general approaches are utilized by courts confronted with the theory and the standard of proof to be adopted: (1) the all or nothing approach; (2) the relaxed standard of proof approach; and (3) the any loss of chance approach.

The all or nothing approach, or traditional approach, is that approach followed by jurisdictions which refuse to recognize the "lost chance" as a distinct and compensable injury. These jurisdictions, which are now probably the minority, strictly adhere to the principle that the plaintiff must prove that the defendant's negligence was the proximate cause of the injury or death suffered by the plaintiff. As such, the plaintiff must establish that there existed a better-than-even chance of avoiding the physical injury or resulting death. If the plaintiff meets this burden, compensation is awarded for the particular injury or wrongful death suffered, not the lost chance of a better recovery or survival. Thus, these jurisdictions refuse to relax the traditional view of proximate cause in medical malpractice actions. As pointed out in *Roberson*, this argument is best illustrated in *Cooper v. Sisters of Charity*, 27 Ohio St. 2d 242, 272 N.E.2d 97 (1971). As the all or nothing (traditional) approach is nothing more than a rejection of the loss of chance theory, which we have already determined is applicable in Kansas, further consideration of the traditional standard of proof would be irrelevant.

The relaxed standard of proof approach, commonly referred to as the "substantial chance" approach, requires plaintiff to present evidence that a substantial or significant chance of survival or better recovery was lost. If plaintiff meets this initial threshold, the causation issue is submitted to the jury, using the traditional proximate cause standard to ascertain whether, in fact, the alleged malpractice resulted in the loss of a substantial or significant chance. Thus, the jury must find by a preponderance of the evidence that the alleged negligence was the proximate cause of the lost chance, but the lost chance itself need only be a substantial or significant chance, for a better result, absent any malpractice, rather than a greater than 50 percent chance of a better result.

An example of this approach is found in *Herskovits v. Group Health*, 99 Wash. 2d 609, 664 P.2d 474 (1983). In *Herskovits*,

representatives of decedent's estate brought a medical malpractice action against defendant for failing to properly diagnose decedent's lung cancer. Defendant's negligence led to a six-month delay in the detection of decedent's cancer. Expert testimony opined that plaintiff lost a 14 percent chance of surviving five years. The trial court granted defendant's motion for summary judgment, ruling that defendant's actions were not the proximate cause of decedent's death. In reversing the trial court's order, the Washington Supreme Court held that compensation for the loss of 14 percent was appropriate because "[t]o decide otherwise would be a blanket release from liability for doctors and hospitals any time there was less than a 50 percent chance of survival, regardless of how flagrant the negligence." 99 Wash. 2d at 614.

The relaxed standard of proof approach was utilized by this court in *Roberson,* where the court stated:

"The question of causation in cases involving negligent treatment of a potentially fatal condition (including failure to refer the patient to an appropriate specialist) is generally a matter to be determined by the finder of fact where the evidence has established the patient had an appreciable chance to survive if given proper treatment. In making the determination, the finder of fact should take into account both the patient's chances of survival if properly treated and the extent to which the patient's chances of survival have been reduced by the claimed negligence." 235 Kan. at 1020.

Although *Roberson* follows the line of cases which have relaxed the standard of proof necessary to permit the case to go to a jury, the court used the term "appreciable" in referring to the extent of the lost chance instead of the terms "substantial" or "significant" which other courts have adopted. Except for the Kansas federal district court cases of *Boody* and *Borgren,* which refer to *Roberson,* our research has failed to disclose other case law where the degree of lost chance was described as "appreciable." A vast majority, if not all, of the cases which adopt a relaxed standard of proof approach refer to the extent of loss as being substantial or significant. See *McBride v. United States,* 462 F.2d 72 (9th Cir. 1972); *Jeanes v. Milner,* 428 F.2d 598 (8th Cir. 1970); *Blackmon v. Langley,* 293 Ark. 286, 737 S.W.2d 455 (1987); *Perez v. Las Vegas Medical Center,* 107 Nev. 1, 805 P.2d 589 (1991); *Kallenberg v. Beth Israel Hosp.,* 45 App. Div. 2d 177, 357 N.Y.S.2d

508 (1975); *McKellips v. Saint Francis Hosp., Inc.,* 741 P.2d 467 (Okla. 1987); *Herskovits v. Group Health,* 99 Wash. 2d 609.

At the other end of the spectrum is the third, or any loss of chance, approach. Under this approach, the courts permit the jury to determine the loss of chance of survival or better recovery no matter how small such chance may be. Thus, plaintiffs are not required to meet any threshold but merely must prove that there was some chance, even one percent, of a better recovery. If the plaintiff is able to provide evidence that the defendant's conduct resulted in any lost chance, even a de minimis amount, summary judgment would be precluded and the case submissible to the jury.

Under this approach, courts generally base their determination on an increased risk of harm approach as stated in Restatement (Second) of Torts § 323(a) (1963). That section provides:

"**Negligent Performance of Undertaking to Render Services**: One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm . . . ."

Jurisdictions utilizing this particular approach rely on § 323 as the basis for relaxing the standard of proof necessary in loss of chance actions to the extent that any degree of lost chance is submissible. Jurisdictions employing this approach include: *Thompson v. Sun City Community Hosp., Inc.,* 141 Ariz. 597, 688 P.2d 605 (1984); *Aasheim v. Humberger,* 215 Mont. 127, 695 P.2d 824 (1985); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978).

One author describes the loss of any chance approach as follows:

"Generally, section 323(a) of the Restatement (Second) of Torts subjects a person to liability if he increases the risk of harm to another. In medical malpractice cases, the risk of harm arises independently of the physician, yet he is responsible for any action which increases the potential for harm to result. *Courts adopting this approach attempt to compensate the plaintiff for an increased risk of harm rather than the loss of a chance.* Damage awards are not discounted for the percentage of harm caused by the physician and death is frequently the compensable injury. .

"This approach differs from the preceding approach, in that any percentage is sufficient to go to the jury, whereas, under the loss of a substantial chance approach courts are limited by their definition of substantial. However, this area really presents an entirely different theory of tort law, functionally based on a physician's duty to rescue a patient. Cases applying section 323(a) employ language from all of the other approaches, so, in its essence, it is a hybrid of all the other approaches and not a very good one." Boggs, *Lost Chance of Survival Doctrine: Should the Courts Ever Tinker with Chance?* 16 So. Ill. U.L.J. 421, 432-33 (1992).

In *Roberson*, we recognized that this court has adopted Restatement (Second) of Torts § 323, in a different context in *Circle Land & Cattle Corp. v. Amoco Oil Co.*, 232 Kan. 482, 657 P.2d 532 (1983). However, we do not read *Roberson* as adopting the any loss of chance approach which Boggs attributes to those cases which rely on § 323. While appreciable loss might be construed as "any loss" no matter how small, in the context in which it was used and considering the cases and authorities relied upon in *Roberson*, we conclude the court used the term as being synonymous with substantial or significant. Thus, we disapprove the language in *Roberson* and its syllabus ¶ 4 which refer to the loss of "an appreciable chance to survive." 235 Kan. 1006, 1020. The more appropriate language would contemplate a substantial chance to survive.

Considering the various approaches adopted by the courts, we are of the opinion that the middle ground or so-called relaxed standard of proof approach is the better rule. In an action to recover for the loss of a chance to survive or for the loss of a chance for a better recovery, the plaintiff must first prove the traditional elements of a medical malpractice action by a preponderance of the evidence. The plaintiff must prove that the defendant was negligent in treating the patient, that the negligence caused harm to the plaintiff, and that as a result the plaintiff suffered damages. In proving that the plaintiff suffered harm, the plaintiff must prove that the lost chance of survival or the lost chance for a better recovery when the plaintiff does survive was a substantial loss of the chance. We do not adopt the any loss of a chance approach nor do we attempt to draw a bright line rule on the percentage of lost chance that would be sufficient for the

case to be submitted to the jury. As we recognized in *Roberson,* the question of causation is generally a matter to be determined by the finder of fact. Our only deviation from the *Roberson* standard is that the evidence must show that the patient had a "substantial" chance of survival or of a better recovery rather than an appreciable one.

We now turn to the final factor in the question submitted and the issue of the proper measure of damages when there has been a substantial lost chance of survival or for a better recovery. It appears to us that any such determination must involve at least two factors. First, the trier of fact must determine the degree to which the otherwise expected recovery has been compromised or adversely affected, and, second, it must calculate the monetary damages resulting therefrom. In the death cases, the degree or extent of the harm resulting from the alleged loss of chance is obvious. It is in the recovery cases where the determination becomes far more difficult. In the loss of a chance for a better recovery cases, we are again convinced that the diminished recovery obtained as a result of malpractice must be one of substance and not merely a minor result that might possibly have been somewhat better absent the malpractice.

In *Perez v. Las Vegas Medical Center,* 107 Nev. 1, the court limited the loss of chance theory to medical malpractice actions in which the plaintiff suffered death or debilitating injury. The Nevada Supreme Court reversed the lower court's order for summary judgment, which was based upon the court's conclusion that decedent "probably would have died anyway due to his serious preexisting physical condition." 107 Nev. at 4. The plaintiff, who was being held at a local detention center, complained of illness for two days before officials admitted him to the hospital for treatment. During his four-day stay, no effort was made to diagnose plaintiff's persistent headaches. Plaintiff died from a massive brain hemorrhage shortly after being returned to the detention center. Plaintiff's medical expert testified that with proper medical treatment, plaintiff had no better than a 50 percent chance of surviving the brain hemorrhage.

In reversing the summary judgment and adopting the loss of chance theory, the Nevada court limited any recovery to those

cases in which the patient actually died or suffered debilitating injury as a result of the alleged malpractice. The court stated:

"[T]he plaintiff or injured person cannot recover merely on the basis of a decreased chance of survival or of avoiding a debilitating illness or injury; the plaintiff must in fact suffer death or debilitating injury before there can be an award of damages. Additionally, the damages are to be discounted to the extent that a preexisting condition likely contributed to the death or serious debilitation." 107 Nev. at 6.

We agree that the damages recoverable should be limited to the amount attributable to the lost or reduced chance itself and not the total damages, which would include those resulting from the preexisting condition. As stated by Professor King:

"The defendant should be subject to liability only to the extent that he tortiously contributed to the harm by allowing a preexisting condition to progress or by aggravating or accelerating its harmful effects, or to the extent that he otherwise caused harm in excess of that attributable solely to preexisting conditions. The effect of preexisting conditions should depend on the extent to which such conditions affect the present and future value of the interest lost." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353, 1360 (1981).

In a case involving the loss of chance for a better recovery, the lessened degree of recovery resulting from the medical malpractice must be more than a token or de minimis amount. While we decline to limit any recovery to a result that is "debilitating," we are satisfied that the reduced recovery or impaired result must be a substantial one.

In calculating damages, there are two common approaches courts have taken in a loss of chance action. The first approach, and the minority view among applicable jurisdictions, is the valuation approach. See *James v. United States*, 483 F. Supp. 581 (N.D. Cal. 1980). Under this method, the court or jury is left without instruction or guidance in ascertaining the appropriate damage figure. Instead, the trier of fact is permitted to use its experience, judgment, and common sense in determining the appropriate value for the lost chance. Although this method is the simplest because the introduction of statistical evidence is unnecessary, the goal of reaching some degree of precision in determining the loss allocation is lacking.

The second and most logical approach is the proportional damage approach recommended by Professor King. See *McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467 (Okla. 1987). Under the proportional damage approach, the amount recoverable equals the total sum of damages ordinarily recovered for the underlying injury or death multiplied by the percent of lost chance. Because this method requires expert medical testimony in ascertaining the appropriate (percent) amount of damages recoverable, courts employing this method eliminate the risks of compensating the plaintiff for anything other than the value of the lost chance. This method was employed by the Kansas Federal District Court in *Boody v. U.S.*, 706 F. Supp. 1458 (D. Kan. 1989). In selecting this approach, the district court dismissed the other methods, concluding that the proportional damage method was the most reasonable approach and the method this court would likely adopt. In relevant part, the court stated:

"This method is preferable because it apportions damages in direct relation to the harm caused; it neither overcompensates plaintiffs or unfairly burdens defendant with unattributable fault. Second, the percentage method gives juries and judges concrete guidelines on how to measure damages, alleviating the 'pulling out of the hat' problem identified with the first method. If the decision maker believes plaintiff's expert(s) on causation, the percentage of chance lost, then it makes the usual finding on the value of a life ($X) and multiplies $X by the percentage of chance lost to arrive at the compensation for the lost chance to survive." 706 F. Supp. at 1465-66.

For a thorough discussion on the issue of valuation of lost chance, see King, 90 Yale L.J. at 1380-86.

We conclude that the proper method for calculating damages in a medical malpractice action based upon the loss of a chance for survival or on a loss of the chance for a better recovery is the proportional recovery method as described in *Boody* and by Professor King.

CONCLUSION

In conclusion, we hold that (1) Kansas does recognize a cause of action for the lost chance for a better recovery due to medical malpractice; (2) to withstand summary judgment, a plaintiff must show that the lost chance for a better recovery was a substantial loss of chance as opposed to a theoretical or de minimis loss; (3)

the resulting injury or lessened degree of recovery suffered by the plaintiff as the result of the malpractice must be substantial; and (4) the finder of fact shall calculate the monetary recovery on the basis of the proportional damage approach.

In closing, we feel compelled to express a caveat. In adopting and applying the loss of chance theory to medical malpractice cases, it must always be kept in mind that the practice of medicine and the furnishing of appropriate health care is not an exact science. In many, if not most, instances there is more than one acceptable approach to treatment, and the fact that one doctor selects one method as opposed to another does not in and of itself mean that one method is better than or preferable to another. For every treatment there are undoubtedly other doctors who might have performed or used a different one. Courts should use extreme caution in second-guessing the methods used by medical care providers, particularly in an area as nebulous as the loss of a chance for a better or more satisfactory recovery.

We realize this opinion, coming to the court as a certified question, leaves many issues unanswered and does not provide any bright line rules of simple application. In this new area of law, the courts must be free to consider the various issues on a case-by-case basis and be free to furnish careful guidance to the jury, depending upon the facts of each case.