**UNITED STATES of America, Defendant Below, Appellant,**

v.

**Mark CUMBERBATCH and Debra P. Cumberbatch, Plaintiffs Below, Appellees.**

**No. 405, 1993.**

Supreme Court of Delaware.

Submitted: Sept. 20, 1994.
Decided: Oct. 5, 1994.

──────────

Gregory M. Sleet, U.S. Atty., and Patricia C. Hannigan, (argued), Asst. U.S. Atty., Wilmington, for appellant.

F. Alton Tybout, Tybout, Redfearn & Pell, Wilmington, for appellees.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ.

VEASEY, Chief Justice:

The following question of law was certified by the United States District Court for the District of Delaware (the "District Court"), and was accepted by this Court on November 24, 1993:

Do the survivors asserting a claim under 10 Del.C. § 3724 who would have a valid claim for money damages if the evidence showed that the [death of the decedent was made more probable] [1] as a result of a defendant's malpractice, have a claim for money damages where the evidence shows that the decedent probably would have died absent the malpractice, but the malpractice is shown to have reduced the decedent's chance of survival from (a hypothetically selected) forty-five percent to (a hypothetically selected) twenty-five percent?

This certified question of law comes before the Court pursuant to Article IV, Section 11(9), of the Delaware Constitution and Supreme Court Rule 41.

The central issue presented by the certified question is whether Delaware recognizes the doctrine of loss of chance of survival or recovery ("loss of chance") in a medical malpractice claim brought pursuant to Delaware's wrongful death statute, 10 Del.C. §§ 3721–3725. The loss of chance doctrine (if adopted) would permit a person to recover damages for the diminution of that person's chance of survival where that diminution was caused by the negligence of a defendant, even though the person already had a greater than 50 percent probability of not surviving. The hypothetical presented by the certified question is a reduction of a person's chance of survival from 45 percent to 25 percent due to the negligence of a defendant.

We hold that such compensation cannot be obtained in a wrongful death action under the Delaware statute, 10 Del.C. § 3724. Accordingly, we conclude that the certified question must be answered in the **NEGATIVE.**

## I. FACTS

The following undisputed facts are set forth in the District Court's Certificate of Question of Law dated November 3, 1993:

1. Agents of the defendant [the United States of America] rendered medical care to the decedent prior to the decedent's death.

2. If the agents of the defendant were negligent in the medical care of the decedent, the defendant is liable for the damages proximately caused by that negligence.

3. The decedent's illness, diagnosed after death, was acute pneumococcal meningitis.

4. The evidence will show that the decedent had a significant chance of death from the onset of the disease and without regard to the care rendered.

5. The evidence will show that with proper and timely care, the decedent's chance of survival, while it may have been less than fifty percent, would have been greater than if the care was not proper or timely.

Although these undisputed facts provide additional information regarding the underlying action, they do not significantly affect our decision, which is based on the purely hypo-

---

1. The substituted language has been added to clarify the original language of the certified question which stated that "the decedent died as a result of a defendant's malpractice...." As the remainder of the certified question makes clear, the death of the decedent is not "a result of" the malpractice, but instead is made "more proba-ble" because of the malpractice. At oral argument before a panel of this Court on April 12, 1994, prior to resubmission to the Court *en Banc* on September 20, 1994, counsel for both parties agreed that the revised formulation of the certified question was more accurate.

thetical scenario set forth in the certified question.[2]

## II. THE LOSS OF CHANCE DOCTRINE

### A. *Delaware Law and Trends Outside Delaware*

The only decision of this Court to discuss the loss of chance doctrine is *Shively v. Klein*, Del.Supr., 551 A.2d 41 (1988). In *Shively*, the parents of a deceased child brought a wrongful death suit against a doctor alleging that the doctor committed medical malpractice by failing to diagnose and treat properly the child's illness. The jury returned a verdict in favor of the doctor and the Superior Court denied the plaintiffs' motions for judgment notwithstanding the verdict and new trial. The plaintiffs appealed claiming, *inter alia*, that a loss of chance instruction should have been included in the jury charge.

This Court began its analysis of this claim by stating the "usual negligence rule":

> To prove proximate cause, the plaintiff has to show that the doctor's negligence was the *probable* cause of the injury. In quantifiable terms, "probable" is any likelihood greater than 50 percent.

*Id.* at 43 (emphasis in original). After describing the differing approaches to the loss of chance doctrine, the Court observed that adopting the instruction proposed by the plaintiffs in *Shively* "would have been a drastic departure from the causation standards consistently applied in Delaware." *Id.* at 44. The Court concluded, however, that it need not rule on the validity of the loss of chance doctrine because the plaintiffs had not pleaded that theory of recovery:

> While we do not here rule out entirely the possible applicability of the doctrine in an appropriate case in Delaware, we note that it is important that any such innovative theory of negligence be pleaded with particularity and taken up at the pretrial conference so that the opposing side has the appropriate knowledge of the issue and the court has a chance to consider it. We also note that a change in the law of the magnitude suggested by plaintiffs would be an appropriate subject of legislation.

*Id.* (citation omitted).[3]

Thus, Delaware law is undeveloped. In this case, it is not necessary for us to explicate what the law would be in a hypothetical personal injury or survival action. It is appropriate in our view, however, that we explore the national state of the law in order to decide the certified question in the proper framework.

The loss of chance doctrine has been the subject of considerable debate among courts and commentators. The controversy has been fueled, in part, by disagreements over the nature and effect of the doctrine. In general, there appear to be three approaches that courts have adopted when addressing the loss of chance doctrine. The first approach is to reject the doctrine as being contrary to traditional principles of tort causation (the "traditional approach"). The second approach is to adopt the doctrine as an exception to traditional causation standards (the "relaxed causation approach"). The third approach is to adopt the doctrine as a method of compensating the lost chance of survival, rather than the death itself (the "proportional approach"). Under the proportional approach, the victim is entitled to a portion of the total amount of death-related

---

**2.** The United States presents additional facts about the case in its opening brief. Such facts cannot be considered in the present procedural context, however, because they are not part of the certified question or the undisputed facts submitted in connection therewith.

**3.** We note that the District Court recently addressed the "increased risk" doctrine in *Cudone v. Gehret*, D.Del., 821 F.Supp. 266 (1993). As its name implies, the increased risk doctrine provides that a person may recover damages if the person's risk of suffering a negative medical condition is increased because of medical malpractice. The increased risk doctrine is considerably broader than the loss of chance doctrine since the former appears to apply even if the plaintiff has a greater than 50 percent chance of survival prior to the malpractice. Moreover, the increased risk doctrine might apply to situations not involving death as the potential outcome. Because the certified question is limited to the loss of chance doctrine in a wrongful death action, we express no opinion on the increased risk doctrine.

damages reflecting the reduction of the victim's chance of survival.

## B. *The Traditional Approach*

One of the leading decisions reflecting the traditional approach is *Cooper v. Sisters of Charity of Cincinnati, Inc.*, 27 Ohio St.2d 242, 272 N.E.2d 97 (1971). In rejecting the loss of chance doctrine, the Ohio Supreme Court held:

> Lesser standards of proof are understandably attractive in medical malpractice cases where physical well being, and life itself, are the subject of litigation. The strong intuitive sense of humanity tends to emotionally direct us toward a conclusion that in an action for wrongful death an injured person should be compensated for the loss of any chance of survival, regardless of its remoteness. However, we have trepidations that such a rule would be so loose that it would produce more injustice than justice. Even though there exists authority for a rule allowing recovery based upon proof of causation by evidence not meeting the standard of probability, we are not persuaded by their logic.
>
> We consider the better rule to be that in order to comport with the standard of proof of proximate cause, plaintiff in a malpractice case must prove that defendant's negligence, in probability, proximately caused the death.

*Id.* 272 N.E.2d at 103 (citations omitted). A substantial number of other jurisdictions have similarly decided not to adopt the loss of chance doctrine based on its apparent inconsistency with traditional causation standards. *See* Lisa Perrochet, Sandra J. Smith, and Ugo Colella, *Lost Chance Recovery and the Folly of Expanding Medical Malpractice Liability*, 27 Tort & Ins.L.J. 615, 629–32 (1992) (hereinafter cited as "Perrochet") (listing 20 states that have refused to adopt the loss of chance doctrine). Nevertheless, one commentator has observed that "a definite judicial trend recognizing lost chance of survival or recovery has developed." Darrell L. Keith, *Loss of Chance: A Modern Proportional Approach to Damages in Texas*, 44 Baylor L.Rev. 759, 769 (1992).

## C. *The Relaxed Causation Approach*

The relaxed causation approach was recently discussed by the Kansas Supreme Court in *Delaney v. Cade*, 255 Kan. 199, 873 P.2d 175 (1994). The *Delaney* Court explained that:

> the loss of chance theory is, essentially, one that allows an injured plaintiff to recover damages based upon a reduced standard of causation rather than the traditional one which requires the plaintiff to prove that it is more probable than not that the damage suffered was caused by the negligence of the defendant.

*Id.* 873 P.2d at 183. A significant number of courts adopting the doctrine have done so using the relaxed causation approach.[4] *See* Perrochet, 27 Tort & Ins.L.J. at 624, 632–33 (listing seven jurisdictions adopting a re-

---

4. A number of courts which have adopted the relaxed causation approach have relied on Section 323 of the Restatement (Second) of Torts, which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if:
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

*See, e.g., Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978). This Court has previously applied Section 323 in the context of premises liability. *See Jardel Co. v. Hughes*, Del.Supr., 523 A.2d 518, 524 (1987); *Furek v. University of Del.*, Del.Supr., 594 A.2d 506, 520 (1991); *see also McCall v. Villa Pizza, Inc.*, Del.Supr., 636 A.2d 912, 914 (1994) (application of Restatement (Second) of Torts § 324 not adopted under facts presented), which is significantly different from the present context. In our view, Section 323 of the Restatement provides little guidance in resolving the fundamental issues that are raised in a loss of chance case (i.e., the nature of the harm and the standard of causation). Section 323 assumes by its terms that the "physical harm result[s] from [the defendant's] failure to exercise reasonable care." Restatement (Second) of Torts § 323 (emphasis added). In a loss of chance case, however, the critical question is whether the physical harm (i.e., death) is in fact the result of the failure to exercise care. Moreover, the true injury in a loss of chance case is not the ultimate physical harm, but instead the reduced chance for a more favorable outcome.

duced causation standard); *see also* John D. Hodson, Annotation, *Medical Malpractice: "Loss of Chance" Causality*, 54 A.L.R.4th 10 (1987).

### D. *The Proportional Approach*

The proportional approach reflects a somewhat different perspective on the question of compensating loss of chance. One author has explained the proportional approach and its rationale as follows:

The current causation approach requires the finder of fact to determine whether the decedent's chances to live or to achieve a more favorable result were more probable than not. Once the evidence shows that a probability did or did not exist, the inquiry ends. As a result, chances of less than fifty-one percent are treated as if they were nonexistent. A more sensible approach would be to redefine the victim's injury as the loss of a chance. Instead of attempting to determine whether the physical harm was caused by negligence, a court could examine the extent of the victim's lost chances for cure or improvement and grant a recovery that mirrors the extent of those chances. When viewing the question in the negligence setting, the harm suffered would be the loss of the chance. The relevant inquiry would be whether the defendant "probably" caused a reduction in the victim's chances. If causation were found, the court would provide compensation for the lost chance in direct proportion to the extent of the lost chance.

Stephen F. Brennwald, Comment, *Proving Causation in "Loss of a Chance" Cases: A Proportional Approach*, 34 Cath.U.L.Rev. 747, 766–67 (1985) (hereinafter cited as "Brennwald") (footnotes omitted).

The origins of the proportional approach lay in a thought-provoking and frequently-cited article by Professor Joseph King. *See* Joseph H. King, Jr., *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences*, 90 Yale L.J. 1353 (1981) (hereinafter cited as "King"). In his article, Professor King focused on the nature of the injury in a loss of chance case and on the

proper method of valuing damages. Professor King's thesis was that:

the loss of a chance of achieving a favorable outcome or of avoiding an adverse consequence should be compensable and should be valued appropriately, rather than treated as an all-or-nothing proposition. Preexisting conditions must, of course, be taken into account in valuing the interest destroyed. When those preexisting conditions have not absolutely preordained an adverse outcome, however, the chance of avoiding it should be appropriately compensated even if that chance is not better than even.

*Id.* at 1354. A number of courts and commentators have subscribed to Professor King's approach. *See* Perrochet, 27 Tort & Ins.L.J. at 624, 636–37 (listing eight states as adopting the "Pure Lost Chance Theory"); *see also* Martin J. McMahon, Annotation, *Medical Malpractice: Measure and Elements of Damages in Actions Based on Loss of Chance*, 81 A.L.R.4th 485 (1990). *Compare* Lori R. Ellis, Note, *Loss of Chance as Technique: Toeing the Line at Fifty Percent*, 72 Tex.L.Rev. 369 (1993).

The argument in favor of the proportional approach is supported by the following reasoning. Since persons are ordinarily entitled to damages when they are harmed as a result of the negligence of another, it would seem unjust to deny compensation to a person simply because the harm suffered is a reduction in the person's chance of survival. If a patient's chance of surviving a disease is reduced from 49 percent to 0 percent because of a doctor's negligence in diagnosing and treating a disease, the patient has been deprived of a substantial opportunity to live. The argument in favor of the proportional approach which has persuaded a number of courts is that it is unjust not to remedy such a loss.

## III. LOSS OF CHANCE AS A WRONGFUL DEATH ACTION CLAIM

The certified question is limited to a scenario in which a loss of chance claim is brought in an action under Delaware's wrongful death statute. That statute provides a cause of action "for the benefit of the

wife, husband, parent and child of the deceased person." 10 *Del.C.* § 3721. Based on the nature of a wrongful death action and the statutory beneficiaries of the deceased (who sue in their own right, not as representatives of the deceased for the benefit of the deceased's estate), we conclude that a loss of chance claim is not viable in such an action.

The purpose of the wrongful death statute "is to permit the recovery of damages not limited to pecuniary losses by persons **injured as a result of the death** of another person." *Id.* § 3725 (emphasis added). Significantly, the statute also provides that an action thereunder is to be maintained against the "person whose wrongful act **causes the death** of another." *Id.* § 3722(a) (emphasis added). *Shively* recognized that it would be a departure from traditional Delaware causation principles to hold that a person has caused another's death where it was probable that the person would have died from his or her medical condition regardless of the malpractice. 551 A.2d at 43–44; *see also Culver v. Bennett*, Del.Supr., 588 A.2d 1094, 1096–97 (1991).

If an injury is suffered in the loss of chance situation, it is the reduced possibility of survival which is the basis of the claim, not the death itself. This distinction is crucial, but has not always been recognized. As one author has noted: "Commentators believe that [the differing approaches of courts to the loss of chance doctrine] arise from the courts' failure to focus on the key issue— namely, where one is deprived of his chance to survive, the actual loss suffered is this lost chance, not the life itself." Patricia L. Andel, Comment, *Medical Malpractice: The Right to Recover for the Loss of a Chance of Survival*, 12 Pepp.L.Rev. 973, 974 (1985); *see also* Brennwald, 34 Cath.U.L.Rev. at 787 ("In loss of a chance cases, however, a plaintiff is

not trying to recover for a wrongful death, but for the loss of a chance to avoid the death."). Since a wrongful death claim is purely statutory and the statute is expressly limited to (1) providing compensation to those statutory beneficiaries injured by the death of another (10 *Del.C.* § 3725), and (2) authorizing the maintenance of an action against a person who "causes the death" of another (10 *Del.C.* § 3722(a)), it is not the proper type of action in which to pursue a loss of chance claim absent legislation enacted by the General Assembly. *See Shively*, 551 A.2d at 44.[5]

We need not decide whether or not plaintiffs' argument would prevail in a personal injury action brought by the alleged victim or in a survival action brought by that person's personal representative. Even if loss of chance claims were actionable in such cases it is not actionable under Delaware's current statutory framework in a wrongful death action. In a personal injury action or in a survival action it is the injured person's claim or the *decedent's* claim, respectively, which is being vindicated, not that of the statutory beneficiaries who are entitled to maintain their action solely by virtue of the wrong death statute. *See Fennell v. Southern Md. Hosp. Ctr.*, Ct.App., 320 Md. 776, 580 A.2d 206, 214 (1990) ("If loss of chance damages are permitted they would under case law have to be awarded under a survival action, not a wrongful death action."). The alleged harm is to the person whose chance of survival might be reduced. It might be logical, therefore, for that person (or the legal representatives of the person) to be able to sue and recover compensation irrespective of whether death has occurred. This principle, which reflects the proportional approach to the loss of chance doctrine, might not require a change in Delaware's traditional causation

---

5. A number of courts from other jurisdictions have held that the loss of chance doctrine should not be applied in actions pursuant to a wrongful death statute because the focus of such actions is obtaining compensation from the tortfeasor who "caused" the death. *E.g., Kramer v. Lewisville Memorial Hosp.*, Tex.Supr., 858 S.W.2d 397, 404 (1993) (rejecting recovery for loss of chance because the Texas wrongful death act "authorizes recovery solely for injuries that cause death, not injuries that cause the loss of a less-than-even

chance of avoiding death"); *Dowling v. Lopez*, 211 Ga.App. 578, 440 S.E.2d 205, 208 (1993) (distinguishing claims under the wrongful death statute that are based on the victim's death from claims for loss of chance); *Cooper v. Sisters of Charity of Cincinnati, Inc.*, 27 Ohio St.2d 242, 272 N.E.2d 97, 104 (1971) (holding that the loss of chance doctrine should not be applied in wrongful death cases because the statute is limited to acts causing death and relaxing the causation standards would be unwise).

principles. While some courts have indicated that only the legislature should determine the propriety of awarding damages for a loss of chance of survival, *see Fennell*, 580 A.2d at 214, we do not find it necessary to so decide here. Although we believe that a legislative solution is appropriate, the courts may have the power to fashion such a remedy through the common law.[6]

## IV. CONCLUSION

The wrongful death statute permits the survivors to assert only their statutory claim, not the claim of the decedent. Accordingly, the certified question must be answered in the **NEGATIVE**.

---

**6.** *Shively* did not decide that only the General Assembly could determine if loss of chance constituted a valid cause of action. All that the *Shively* court stated was "We also note that a change in the law of the magnitude suggested by plaintiffs would be an appropriate subject of legislation." 551 A.2d at 44. It is to be noted that the General Assembly has not acted in this area.